142 P.3d 708

PHELPS DODGE CORPORATION, Phelps Dodge Morenci, Inc., Bisbee Queen Mining Company, Phelps Dodge Ajo, Inc., Phelps Dodge Hidalgo, Inc., Phelps Dodge Chino, Inc., Phelps Dodge Tyrone, Inc., Phelps Dodge Miami, Inc., Plaintiffs–Appellants,

v.

EL PASO CORPORATION, El Paso Natural Gas Company, El Paso Merchant Energy Company, Defendants–Appellees.

No. 1 CA–CV 05–0683.

Court of Appeals of Arizona, Division 1, Department D.

Sept. 7, 2006.

Ryley Carlock Applewhite PA By Clarke H. Greger, Matthew T. Clarke, Nancy S. Hawkins, Phoenix, and Kasowitz Benson Torres & Friedman LLP By Michael M. Fay, New York, Attorneys for Plaintiffs–Appellants.

Lewis and Roca LLP By Dale A. Danneman, Phoenix, and Morrison & Foerster LLP By Stuart C. Plunkett, Stephen P. Freccero, San Francisco, Attorneys for Defendants–Appellees.

## OPINION

PORTLEY, Judge.

¶ 1 Phelps Dodge Corporation and its subsidiaries[1] (collectively "Phelps Dodge") appeal the judgment dismissing their complaint with prejudice. Because the trial court did not have subject matter jurisdiction over Phelps Dodge's claim, we affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Phelps Dodge, a New York corporation with its principal place of business in Arizona, purchases natural gas for its mining and industrial operations. The natural gas is delivered from gas and oil fields in Texas, New Mexico, and Colorado[2] through an interstate natural gas pipeline.

¶ 3 The pipeline is owned and operated by El Paso Natural Gas Company ("EPNG"), an interstate pipeline company regulated by the Federal Energy Regulatory Commission ("FERC") under the Natural Gas Act ("NGA"), 15 U.S.C. §§ 717–717z (2006).[3] EPNG delivers natural gas to its customers pursuant to a FERC certificate of public convenience and necessity. El Paso Corporation is the parent of EPNG and of El Paso Merchant Energy Company ("EPME"), a natural gas marketer (collectively "El Paso").

### A. The FERC Proceeding

¶ 4 Phelps Dodge and others filed a complaint with the FERC in July 2001 pursuant to section 5 of the NGA, 15 U.S.C. § 717(d). *See El Paso Natural Gas Co.,* 99 F.E.R.C. ¶ 61,244, at 61,999, 2002 WL 2013618 (2002). They claimed that EPNG violated the NGA by improperly withholding capacity by limiting the transportation of natural gas in its pipeline during 2000 and 2001. *See id.* The FERC rejected the claim that EPNG was at fault for reductions in service and stated that capacity limitations were no-fault occurrences.[4] On appeal, the District of Columbia

---

1. The subsidiaries are: Phelps Dodge Morenci, Inc.; Bisbee Queen Mining Company; Phelps Dodge Ajo, Inc.; Phelps Dodge Hidalgo, Inc.; Phelps Dodge Chino, Inc.; Phelps Dodge Tyrone, Inc.; and Phelps Dodge Miami, Inc.

2. The Permian Basin is located primarily in Texas, and the San Juan Basin is located in New Mexico and Colorado.

3. *See Natural Gas Regulation and the Federal Energy Regulatory Commission,* 4 West's Fed. Admin. Prac. § 4559 (4th ed.2006).

4. In this proceeding, the FERC altered a settlement agreement between El Paso and its customers. *See id.* at 61,998. The settlement was approved in 1996 and set the rates, terms, and conditions of service for a ten-year period. *Id.* Under the terms of the settlement, "the [contract demand] customers [paid] a reservation charge pursuant to Rate Schedule FT–1 based on their contract entitlements. The Rate Schedule FT–1 [full requirements] customers [paid] reservation fees based on their billing determinants as established in the 1996 Settlement." *Id.* Because the reservation fees remained unchanged while demands grew, "the result [was] that the [full requirements customers paid] only a small usage charge for their incremental takes above the Settlement billing determinants." *Id.* The FERC order directed that all full requirements customers be converted to contract demand customers. *Id.* at 61,997. Phelps Dodge had been a full requirements customer. *Id.* at 61,999 n. 13.

Court of Appeals affirmed the FERC's orders and found that "El Paso operated its 'dynamic' pipelines at reasonable levels of capacity." *Ariz. Corp. Comm'n v. F.E.R.C.*, 397 F.3d 952, 955 (D.C.Cir.2005).

## B. State Litigation

¶ 5 On February 3, 2004, Phelps Dodge sued El Paso in Maricopa County Superior Court alleging restraint of trade and monopolization in violation of the Arizona Uniform Antitrust Act, Arizona Revised Statutes ("A.R.S.") sections 44–1401 to –1416, and the New Mexico Antitrust Act, New Mexico Statutes §§ 57–1–1 to –19 (2006). The complaint alleged that El Paso "possessed monopoly power over the transportation of natural gas in the southwestern United States and willfully maintained and used that power to unlawfully manipulate and inflate the price of natural gas." Consequently, Phelps Dodge "was forced to incur millions of dollars in unwarranted costs for that gas."

¶ 6 Specifically, the complaint alleges that EPNG and EPME withheld capacity on EPNG's interstate pipeline in 2000 and 2001:

Because El Paso has market power over capacity (i.e., the transportation) of natural gas available in the Southwest NG Market, El Paso can constrain the supply of natural gas available in that Market by simply not transporting all of the natural gas it is legally obliged to transport to distribution points along the EPNG SW Pipelines. In 2000 and 2001, El Paso intentionally did just that, and the resulting decrease in the supply of natural gas drove up the price of natural gas in the Southwest NG Market.

. . . .

Second, between March 1, 2000 and May 31, 2001, EPNG abused its monopoly power over natural gas transportation by implementing an anticompetitive scheme that included artificially constraining natural gas capacity on the EPNG SW Pipelines. EPNG constrained capacity on its pipeline system by, among other things, routinely understating to natural gas users the capacity of natural gas available at distribution points. Indeed, on average, EPNG understated the capacity available at California and Arizona distribution points by

approximately 21 percent, thereby unlawfully refusing to transport over a fifth of its pipeline system's natural gas capacity to willing buyers at those points. This conduct constrained the supply of natural gas on the EPNG SW Pipelines and caused spikes in the price of natural gas throughout the Southwest NG Market.

Additionally, Phelps Dodge alleged that it was damaged because El Paso's actions increased natural gas prices in 2000 and 2001. It alleged:

During the period at issue, Phelps Dodge purchased significant amounts of natural gas in the Southwest NG Market. Because of El Paso's anticompetitive conduct, the prices that Phelps Dodge was forced to pay for this natural gas were exorbitant. All plaintiffs were forced to pay anticompetitive prices for natural gas, which prices directly resulted from El Paso's price manipulations in the Southwest NG Market.

## C. Superior Court Ruling

¶ 7 After El Paso unsuccessfully attempted to remove this case to federal district court, it moved to dismiss the complaint pursuant to Arizona Rules of Civil Procedure 12(b)(1) and 12(b)(6) because (1) the trial court lacked subject matter jurisdiction based upon section 19(b) of the NGA, 15 U.S.C. § 717r(b); (2) federal law pre-empted Phelps Dodge's claims; (3) issue preclusion barred Phelps Dodge from relitigating the withholding issue; and (4) two companies with a common parent cannot, as a matter of law, engage in a conspiracy. The trial court granted the motion on the basis of federal pre-emption. After its motion for reconsideration and/or new trial or amendment or modification of the court's order was denied, Phelps Dodge appealed.

## DISCUSSION

¶ 8 We independently review motions to dismiss for failure to state a claim. *See Baker v. Rolnick*, 210 Ariz. 321, 324, ¶ 14, 110 P.3d 1284, 1287 (App.2005). We will sustain a dismissal only if the plaintiffs "could not be entitled to relief under any facts susceptible of proof under the claims

stated." *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 186, 677 P.2d 1292, 1294 (1984). Moreover, we assume the truth of all material facts alleged by Phelps Dodge. *Gatecliff v. Great Republic Life Ins. Co.,* 154 Ariz. 502, 508, 744 P.2d 29, 35 (App.1987).

■ ¶ 9 Phelps Dodge argues that the superior court misconstrued its complaint as a challenge to the FERC-approved rates, rather than alleging that El Paso's monopolistic conduct drove up the market price for natural gas. Phelps Dodge also argues that the superior court erred in denying its motion for reconsideration/new trial on the ground that it would require the trial court to second-guess findings already made by the FERC.

¶ 10 El Paso contends that Section 19(b) of the NGA, 15 U.S.C. § 717r(b), precludes state and federal courts from hearing any claim that collaterally attacks a FERC decision. Section 19(b) grants the United States Courts of Appeals exclusive jurisdiction "to affirm, modify, or set aside [a FERC] order in whole or in part." 15 U.S.C. § 717r(b). Therefore, a claim that in substance challenges a FERC decision, if filed in another court, must be dismissed for lack of subject matter jurisdiction. *Sw. Ctr. for Biological Diversity v. F.E.R.C.,* 967 F.Supp. 1166, 1173–75 (D.Ariz.1997) (holding that an Arizona federal district court could not exercise jurisdiction over a claim that the FERC violated the Endangered Species Act). Collateral attacks on an agency decision, even when packaged as state law claims, are prohibited. *See Transmission Agency of N. Cal. v. Sierra Pac. Power Co.,* 295 F.3d 918, 927 (9th Cir.2002) (finding no jurisdiction for inverse condemnation and breach of contract claims).

¶ 11 Phelps Dodge has clearly alleged claims arising out of state statutes. Its complaint includes allegations that the plaintiffs had to pay "anticompetitive prices" for natural gas due to El Paso's manipulations of the market. *See Bunker's Glass Co. v. Pilkington, PLC,* 206 Ariz. 9, 12, ¶ 4, 75 P.3d 99, 102 (2003) (stating that both direct and indirect purchasers may sue pursuant to the Arizona Antitrust Act to redress an antitrust injury). Thus, our state courts have the authority to decide the state law antitrust claims.

¶ 12 The question, however, does not concern the trial court's authority to hear a state law claim, but whether Phelps Dodge's claims constitute "a challenge to or request for action by the [FERC]" that can be reviewed only in the federal courts of appeals. *Sw. Ctr.,* 967 F.Supp. at 1174. If that is the case, then Section 19(b) necessarily precludes "*de novo* litigation between the parties of *all issues inhering in the controversy.*" *Williams Natural Gas Co. v. City of Okla. City,* 890 F.2d 255, 262 (10th Cir.1989) (quoting *City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 336, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958)).

¶ 13 During the FERC proceeding and the resultant appeal, Phelps Dodge contested the FERC's orders modifying its settlement with El Paso, which set the terms under which natural gas is shipped over El Paso's lines, and making Phelps Dodge a contract demand customer. *Ariz. Corp. Comm'n,* 397 F.3d at 953. According to the District of Columbia Circuit Court of Appeals, "[t]he main factual question [was] whether the record contain[ed] substantial evidence of capacity curtailments on El Paso's mainline severe enough to render firm service unreliable and thus justify Commission action under *Mobile–Sierra.*" [5] *Id.* at 954. The court concluded: "Nor do petitioners persuade us that El Paso improperly withheld capacity. The FERC observed, and petitioners did not disprove, that El Paso operated its 'dynamic' pipelines at reasonable levels of capacity." *Id.* at 955 (citation omitted). The issues of capacity and the alleged improper withholding of it were "inhering in the controversy,"

5. *"Mobile–Sierra"* refers to the public interest standard set forth in *United Gas Pipe Line Co. v. Mobile Gas Service Corp.,* 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956), and *Federal Power Commission v. Sierra Pacific Power Co.,* 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956). "Under the *Mobile–Sierra* doctrine FERC may abrogate or modify freely negotiated private contracts that set firm rates or establish a specific methodology for setting the rates for service, and deny either party the right to unilaterally change those rates, only if required by the public interest." *Atl. City Elec. Co. v. F.E.R.C.,* 295 F.3d 1, 14 (D.C.Cir. 2002).

and were specifically addressed and rejected on the merits. *See supra* ¶ 12.

¶ 14 In its superior court complaint, Phelps Dodge alleges that the FERC did not consider the issue of capacity withholding in the context of antitrust claims. The superior court agreed with Phelps Dodge and mistakenly concluded that the FERC abstained from considering the reasons for the withholding. The circuit court, however, found no persuasive evidence of improper withholding. *See Ariz. Corp. Comm'n*, 397 F.3d at 955.

¶ 15 Furthermore, the United States Supreme Court has explained that Section 19(b)'s statutory preclusion provision applies even when a party does not expressly seek to modify a Federal Power Act order. In *City of Tacoma v. Taxpayers of Tacoma*,[6] the State of Washington contested Tacoma's right to condemn state property under a federal license to construct a power plant. 357 U.S. at 322–23, 78 S.Ct. 1209. A federal appellate court held that state law did not bar the City of Tacoma from acting under the federal license and affirmed its issuance. *Id.* at 338, 78 S.Ct. 1209. Thus, the State of Washington could not file a subsequent state court action questioning Tacoma's authority to take the property. Although the state litigation did not seek to set aside the federal license, the state litigation was precluded because it had the effect of challenging the licensing action. *Id.* at 339–40, 78 S.Ct. 1209.

¶ 16 This is the case here. Although Phelps Dodge has filed state law claims, its claims are an indirect challenge to the earlier FERC decision. Phelps Dodge's claims are not exempt from the collateral attack bar and "it matters not whether [Phelps Dodge's] suit is grounded in contract, administrative law or some other legal theory." *Pac. Power & Light Co. v. Bonneville Power Admin.*, 795 F.2d 810, 815–16 (9th Cir.1986) (dismissing

breach of contract claim); *accord Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 912 (9th Cir.1989) (holding that any attempt to challenge a FERC-issued license, no matter how pleaded, falls under the federal court of appeals' jurisdiction); *Williams*, 890 F.2d at 264 (holding that a state court proceeding on state franchise law "constituted an impermissible collateral attack on a FERC order"). Thus, the superior court lacked subject matter jurisdiction to hear Phelps Dodge's lawsuit which indirectly attacked the FERC decision.

## CONCLUSION

¶ 17 Based on the foregoing, and the lack of subject matter jurisdiction, we affirm the dismissal of Phelps Dodge's claims.[7]

CONCURRING: G. MURRAY SNOW, Presiding Judge and LAWRENCE F. WINTHROP, Judge.

---

6. *City of Tacoma v. Taxpayers of Tacoma* involved a federal license issued by the Federal Power Commission, which later became the Federal Energy Regulatory Commission. *See Pub. Serv. Comm'n v. F.E.R.C.*, 575 F.2d 892, 892 n. * (D.C.Cir.1978) ("The functions of the Federal Power Commission were transferred to the Federal Energy Regulatory Commission by § 402 of Public Law 95–91, 91 Stat. 565.").

7. "[I]f the trial court based its ruling upon the wrong reasons but was correct in its ruling for any reason, the appellate court is bound to affirm." *City of Tucson v. Morgan*, 13 Ariz.App. 193, 195, 475 P.2d 285, 287 (1970).

Because we resolve the issue on subject matter jurisdiction, we need not examine Phelps Dodge's other challenges.