NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MIDTOWN MEDICAL GROUP, INC. dba Priority Medical Center,
*Plaintiff/Appellant*,

*v.*

FARMERS INSURANCE GROUP, *Defendant/Appellee*.

No. 1 CA-CV 13-0276

FILED 07-15-2014

Appeal from the Superior Court in Maricopa County
No. CV2012-001687
The Honorable Katherine M. Cooper, Judge

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART
AND REMANDED**

COUNSEL

Law Office of Eleanor L. Miller, Phoenix
By Eleanor L. Miller
*Counsel for Plaintiff/Appellant*

Kunz Plitt Hyland & Demlong, Phoenix
By William M. Demlong, Donald R. Kunz, Paige C. Pataky
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Donn Kessler and Judge Patricia K. Norris joined.

---

**P O R T L E Y,** Judge:

¶1        Midtown Medical Group, which does business as Priority Medical Center ("PMC"), appeals an order dismissing its second amended complaint against Farmers Insurance Group ("Farmers") for failure to state a claim upon which relief may be granted.  For the reasons set forth in our companion opinion and as follows,[1] we affirm in part, reverse in part, vacate in part, and remand.

## FACTS[2] AND PROCEDURAL HISTORY

¶2        PMC treated Shelby Davidson for injuries she suffered in a car accident caused by an individual insured by Farmers.  Kimberly Willis, a Farmers' insured, was injured in a separate car accident, which she caused, and treated by PMC for her injuries.  PMC had Davidson and Willis separately sign a document titled "Lien, Contract and Authorization to Release Medical Records," and  then perfected the liens by recording them with the Maricopa County Recorder's Office pursuant to Arizona Revised Statutes ("A.R.S.") sections 33-931 to -932.[3]  A copy of each lien was sent to Farmers by certified mail.  Additionally, PMC sent a

---

[1] In a separate opinion filed contemporaneously with this memorandum decision, we reverse the dismissal of PMC's claim against Farmers for statutory enforcement of a medical lien.

[2] Because the superior court granted the motion to dismiss, we accept the well-pled facts in the amended complaint as true.  *See Coleman v. City of Mesa*, 230 Ariz. 352, 361, ¶ 36, 284 P.3d 863, 872 (2012).

[3] We cite the current version of statutes unless otherwise noted.

letter to Farmers directing it to include the name of PMC on any draft for settlement sent to Davidson.[4]

¶3        Davidson and Willis separately settled their respective cases with Farmers, signed a release, and each received a settlement check from Farmers that included PMC as the joint payee.  Davidson negotiated her $374.40 check without getting PMC's endorsement.  PMC alleged that Willis either negotiated her check or that she retains the check; nevertheless, PMC never endorsed either check, did not sign a release for either lien, and remains unpaid for the medical treatment for both.

¶4        PMC filed a complaint against Farmers.  In its second amended complaint, PMC sought to enforce both medical liens pursuant to A.R.S. § 33-934(A); alleged intentional interference with contractual relations between PMC and Davidson and Willis; and alleged actions on a negotiable instrument.  PMC also sought declaratory relief and to permanently enjoin Farmers from paying any claimant without separately paying the medical provider's lien.

¶5        Farmers filed a motion to dismiss for failure to state a claim upon which relief can be granted.  After oral argument, the superior court dismissed the action.  Specifically, the court found that PMC failed to allege facts that Farmers had a contractual relationship with PMC to allow PMC to pursue its breach of contract/actions on a negotiable instrument; that PMC failed to allege facts that Farmers' "intentional interference induc[ed] or caus[ed] a breach or termination of the relationship or expectancy" to support its intentional interference with a contractual relationship claims.[5]

¶6        PMC filed a notice of appeal and an amended notice of appeal after the court awarded Farmers attorneys' fees and costs.  We have jurisdiction under A.R.S. § 12-2101(A)(1).

---

[4] PMC instructed Farmers that: "the name of PMC must be placed on any draft of payment or any award, settlement or judgment to . . . Davidson. . . .  If payment should be made to . . . Davidson without the inclusion of our name, we will hold your company, or any other parties making said payment, responsible."

[5] We only discuss the court's findings relevant to this memorandum decision.  The other findings are discussed in the companion opinion.

## DISCUSSION

¶7　　　　PMC challenges the dismissal of its second amended complaint. We review the dismissal de novo. *Coleman*, 230 Ariz. at 355, ¶ 7, 284 P.3d at 866. "We will sustain a dismissal only if the plaintiff[] could not be entitled to relief under any facts susceptible of proof under the claims stated." *Phelps Dodge Corp. v. El Paso Corp.*, 213 Ariz. 400, 402-03, ¶ 8, 142 P.3d 708, 710-11 (App. 2006) (internal quotation marks omitted). We limit our review to the pleadings and assume the truth of well-pled facts while making reasonable inferences. *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7, 189 P.3d 344, 346 (2008) (noting that conclusory statements insufficiently state a claim upon which relief may be granted). We also review the trial court's interpretation and application of any statute de novo. *Thomas v. Thomas*, 203 Ariz. 34, 36, ¶ 7, 49 P.3d 306, 308 (App. 2002). We review the lien statutes liberally, but require strict compliance to any statutory requirements. *Nationwide Mut. Ins. Co. v. Ariz. Health Care Cost Containment Sys.*, 166 Ariz. 514, 517, 803 P.2d 925, 928 (App. 1990).

## I.　　Intentional Interference with Contractual Relations

¶8　　　　PMC argues that its intentional interference with contractual relations claim should not have been dismissed. We disagree.

¶9　　　　To state a cause of action for interference with contractual relations, a party must plead: (1) a valid contractual relationship; (2) the interferer knows about the relationship; (3) intentional interference inducing or causing a breach; (4) damages; and (5) defendant acted improperly. *Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 10, ¶ 14, 106 P.3d 1020, 1025 (2005). Here, although PMC argues that it alleged that Farmers intentionally interfered with PMC's contracts with Davidson and Willis by paying them a settlement without simultaneously or first paying the PMC liens, PMC did not plead facts showing that there was substantial certainty that Farmers intentionally induced a breach by Davidson or Willis. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 494, ¶ 77, 38 P.3d 12, 32 (2002) (noting that the third element of intentional interference requires the interferer to know or intend that "a particular result was substantially certain to be produced by its conduct" (internal quotation marks

omitted)). PMC also failed to allege facts that Farmers acted improperly by issuing the joint-payee checks.[6]

¶10 Although PMC alleged that the settlement checks were not simultaneously paid to PMC, it is well-settled that delivery of a joint check is constructive delivery to all payees. A.R.S. § 47-3420(A)(2); *Cook v. Great W. Bank & Trust*, 141 Ariz. 80, 86, 685 P.2d 145, 151 (App. 1984). Moreover, there were no well-pled allegations that Farmers knew or intended the bank or banks to negotiate checks with improper endorsements in order to preclude payment to PMC. There were no allegations that Farmers was "substantially certain" that Davidson or Willis would not uphold their contracts with PMC if Farmers sent joint checks directly to them. There were no allegations that the checks would be negotiated without PMC's endorsement or release of its liens. Although PMC alleged that "[Farmers'] wrongful conduct was motivated by an intent to deprive PMC of that which rightfully belonged to it," that was a conclusory allegation and there were no specific allegations demonstrating Farmers' motivation. Similarly, although PMC alleged that Farmers acted consciously and deliberately to deprive PMC of the lien amounts, that allegation was also a legal conclusion and there were no well-pled factual allegations supporting the assertion.

¶11 PMC also alleged that Farmers intentionally interfered with the Willis-PMC contract by sending a joint check to Willis after Farmers sent a check payable only to PMC for treating Michael R., a person who was injured with Willis. The allegation did not, however, allege with specificity that Farmers knew or intended with substantial certainty that Willis would not seek PMC's endorsement on the joint-payee check or would not pay for her treatment. *See Wells Fargo Bank*, 201 Ariz. at 494, ¶ 77, 38 P.3d at 32. The allegation also failed to allege facts that Farmers acted improperly in sending a joint check. Given the deficiencies in the second amended complaint, the claim was properly dismissed.

---

[6] PMC raises additional allegations on appeal that are not in its second amended complaint, and we will not consider those allegations. *See Cullen*, 218 Ariz. at 419, ¶ 7, 189 P.3d at 346 (stating that we limit our review to the pleading itself when adjudicating a Rule 12(b)(6) motion to dismiss). PMC also contends in its opening brief that Farmers sent the checks to the patients to induce them to convert the funds for their own use and not pay PMC, but that is not a reasonable inference from the facts as pled. *See id.* (noting that the court only accepts reasonable inferences).

## II.     Breach of Contract/Action on Negotiable Instrument

**¶12**      PMC also challenges the dismissal of its claim that Farmers breached its contract with PMC because PMC was never paid by Davidson or Willis.  PMC alleged that each settlement check Farmers issued to the injured parties and PMC was a contract and an unconditional promise to pay, and that Farmers breached the contract because PMC was not paid.

**¶13**      Even though the superior court did not believe that a check was a contract between PMC and Farmers, it is clear that a check, as a negotiable instrument, is a formal contract.  *See* Restatement (Second) of Contracts § 6(c) (1981) (listing "negotiable instruments and documents" as formal contracts, while noting that they may be subject to special rules depending on their formal characteristics and that they may differ from governing contracts generally); *see also 1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 383-84 (Tex. 2011) (concluding that a check, as a negotiable instrument, is a formal contract).  PMC, however, cannot recover under the check as a matter of law because once a check is "accepted by a bank, the drawer is discharged, regardless of when or by whom acceptance was obtained."  A.R.S. § 47-3414(C).[7]  In fact, once "the check is paid, or the check is accepted at the bank at which it is made payable" any debt is generally extinguished, *Prevo v. McGinnis*, 142 Ariz. 298, 302, 689 P.2d 557, 561 (App. 1984) (citation omitted) (internal quotation marks omitted), but for the statute that allows a medical lienholder to pursue payment when it had not provided a release.  *See* A.R.S. § 33-934(A).  Consequently, the superior court properly dismissed the breach of contract/action on a negotiable instrument claim as to the Davidson check.

---

[7] To support its argument, PMC cites the following cases noting that the drawer is still responsible even when the check is dishonored or the bank honors a stop payment order: *Congress Industries, Inc. v. Federal Life Insurance Co. (Mutual)*, 114 Ariz. 361, 363, 560 P.2d 1268, 1270 (App. 1977); *Mason v. Blayton*, 119 Ga. App. 203, 205, 166 S.E.2d 601, 603 (1969); *State v. Hardin*, 627 S.W.2d 908, 912 (Mo. App. 1982); *Diemar & Kirk Co. v. Smart Styles, Inc.*, 261 N.C. 156, 159, 134 S.E.2d 134, 137 (1964).  Those cases, however, do not inform our analysis because PMC never provided its endorsement for either check, and a payee other than PMC received the funds.

¶14 Moreover, the same analysis applies to the Willis check if it was negotiated. If, however, it has not been negotiated then there has been no breach – Willis may yet seek the PMC endorsement before negotiating the check. Consequently, the superior court did not err when it dismissed the breach of contract claim as to the Willis joint check.

## CONCLUSION

¶15 Based on the foregoing, we affirm the dismissal of all PMC's claims against Farmers except for the statutory enforcement of a medical lien, reverse that ruling, vacate the award of attorneys' fees, and remand the matter for further proceedings.



Ruth A. Willingham · Clerk of the Court
FILED: gsh