NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TERRON TAYLOR, *Plaintiff/Appellant,*

*v.*

ARIZONA PUBLIC SERVICE, an Arizona corporation; PAUL D. ROSE
and CARRIE A. ROSE, husband and wife, *Defendants/Appellees.*

No. 1 CA-CV 14-0229
FILED 6-16-2015

Appeal from the Superior Court in Maricopa County
No.  CV2013-000650
The Honorable Mark H. Brain, Judge

**AFFIRMED**

COUNSEL

Kenneth S. Countryman, P.C., Tempe
By Kenneth S. Countryman
*Counsel for Plaintiff/Appellant*

Gaona Law Firm, Phoenix
By David F. Gaona
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

---

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Jon W. Thompson joined.

---

**P O R T L E Y**, Judge:

¶1        Terron Taylor appeals a summary judgment granted in favor of Arizona Public Service, Paul Rose, and Carrie Rose (collectively "APS"). We are asked to decide whether a compromise agreement in a theft of electricity criminal case filed by the City of Phoenix (the "City") can operate as an accord and satisfaction for the months that were not prosecuted in the amended criminal complaint.   Because the trial court did not err by determining that the compromise agreement was not an accord and satisfaction, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2        Taylor became an APS customer in late 2002.  In early 2011, noticing that Taylor had significantly lower electricity consumption than the rest of the neighborhood, Paul Rose, an APS employee, investigated Taylor's meter.   APS installed a submeter[1] on February 1, 2011, and recorded all of the electricity that went to Taylor's residence.   APS compared the submeter's recordings with Taylor's meter for five months and, as a result, determined that Taylor used more electricity than was recorded, billed or paid.  Using the five month information, APS estimated that Taylor's electricity consumption since January 1, 2003, was higher than billed and it concluded he owed APS $33,028.32.

¶3        APS also inspected Taylor's meter and found a hole drilled into the side of the meter, which would affect the meter's ability to record the amount of electricity that passed through it.  APS reported the theft of

---

[1] A submeter is a device that records the amount of electricity as it passes through the main service lines before reaching the residence.  The device is commonly used to measure the amount of electricity being provided to a residence when there is reason to believe electricity is being diverted around the meter.  The recording of the submeter is then compared to the customer's meter.

electricity to the Phoenix police, and, using the estimated electricity consumption, requested that Taylor be prosecuted for theft of electricity from January 1, 2003 to June 29, 2011.

¶4 Based on the investigation, the City filed a criminal complaint[2] against Taylor for fraud and theft of electricity from January 1, 2003 to June 29, 2011, in violation of Arizona Revised Statutes ("A.R.S.") sections 13-3724 and -1802,[3] a class 1 misdemeanor. The criminal complaint was, however, amended without objection to allege theft of electricity for only the five month period covered by APS's submeter. Taylor then entered into plea discussions with the City prosecutor, which included restitution to APS. Eventually, the parties agreed to a misdemeanor compromise that required Taylor to pay APS restitution of $4300. Taylor paid the restitution by certified check, and wrote on the check "Settlement of all claims with APS per agreement with State." APS deposited the check as payment. A few days later, an APS employee appeared in municipal court and stated that APS was made whole for the injury. After taking the testimony, the court dismissed the prosecution under the terms of the agreement and A.R.S. § 13-3981.

¶5 A month after the criminal matter was dismissed, APS sent Taylor a shut-off warning and demanded $17,208.72 in order to continue electric service to his house. Taylor then filed this lawsuit alleging breach of contract, breach of good faith and fair dealing, constructive fraud, common law fraud, and intentional infliction of emotional distress. Taylor also sought a temporary restraining order to prevent APS from terminating his electric service. Before APS filed an answer, Taylor filed a motion for declaratory judgment and partial motion for summary judgment regarding accord and satisfaction. APS then filed its answer, filed a response to Taylor's motions, and sought partial summary judgment regarding accord and satisfaction. The court, after briefing and argument, denied Taylor's motion for summary judgment and took APS's motion under advisement. The court subsequently granted APS's motion, and requested additional briefing on APS's ability to disconnect Taylor considering its claim is "inherently unliquidated" and subject to dispute.

---

[2] The case was entitled "State of Arizona v. Terron Nathan Taylor, City of Phoenix Municipal Court, No. 2011-9033484." Taylor used M-0741-4470592 as the case number on his pleadings.

[3] We cite to the current version of the statute unless otherwise noted.

¶6        Taylor did not brief the requested issue, but filed a motion for new trial and moved to strike the affidavits APS had attached to its motion for partial summary judgment.  The court denied both motions.  APS then filed a motion for summary judgment seeking to terminate electric services to Taylor.  Instead of responding to the motion, Taylor filed a motion for reconsideration of the accord and satisfaction partial summary judgment, which was denied.

¶7        The court subsequently granted APS's motion for summary judgment that it could terminate electric service to Taylor because Taylor's dispute is about the amount of his bill, which is governed by the administrative procedures described in Arizona Administrative Code ("A.A.C.") R14-2-212.  Taylor then filed another unsuccessful motion for new trial.  The court entered a final judgment, and Taylor appealed.  We have jurisdiction under A.R.S. § 12-2101(1).

**DICUSSION**

¶8        Taylor contends that the trial court erred by finding that the $4300 restitution payment was not an accord and satisfaction for all of his debts with APS.  We disagree.

¶9        We review a grant of summary judgment de novo and view the facts in the light most favorable to the non-moving party.  *Andrews v. Blake,* 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003).  A court may grant summary judgment "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a).  The determination of whether a genuine issue of material fact exists is based on the record made in the trial court.  *Phoenix Baptist Hosp. & Med. Ctr., Inc. v. Aiken,* 179 Ariz. 289, 292, 877 P.2d 1345, 1348 (App. 1994).  We can, however, affirm the judgment if the court was "correct in its ruling for any reason."  *Phelps Dodge Corp. v. El Paso Corp.,* 213 Ariz. 400, 404 n.7, ¶ 17, 142 P.3d 708, 712 n.7 (App. 2006) (citation omitted); *see Dube v. Likins,* 216 Ariz. 406, 417 n.3, ¶ 36, 167 P.3d 93, 104 n.3 (App. 2007) (in examining the trial court's ruling, we noted that we may affirm the trial court if it is correct for any reason supported by the record).

¶10        Taylor contends that the court erred by considering the language of the misdemeanor compromise in resolving the issue.  Instead, he argues that A.R.S. § 47-3311, which governs accord and satisfaction by instrument, was satisfied when he wrote "Settlement of all claims with APS" on the $4300 certified check.  Taylor also claims that because he

submitted the check twelve days before APS signed the misdemeanor compromise, the compromise was not part of the accord and satisfaction.

¶11        The language on the face of the check, however, undermines Taylor's argument.    "Construction and enforcement of settlement agreements, including determinations as to the validity and scope of release terms, are governed by general contract principles." *Emmons v. Superior Court,* 192 Ariz. 509, 512, ¶ 14, 968 P.2d 582, 585 (App. 1998) (citations omitted).    Moreover, "[i]t is well established that a contract must be construed as a whole and the intentions of the parties thereto must be collected from the entire instrument and not from detached portions." *O'Malley Inv. & Realty Co. v. Trimble*, 5 Ariz. App. 10, 16, 422 P.2d 740, 746 (1967) (citations omitted).

¶12        Here, the language on the certified check that Taylor added states "Settlement of all claims with APS per agreement with State."  The clause demonstrates that Taylor's agreement was not merely an agreement with APS, but "per agreement with State."  The language "per agreement with State" modifies the clause "Settlement of all claims with APS." *See generally Phoenix Control Sys., Inc. v. Ins. Co.*, 165 Ariz. 31, 34, 796 P.2d 463, 466 (1990) (noting that under the rules to interpret a contract a qualifying phrase is applied to the phrase immediately preceding the qualifying phrase as long as there is no contrary intent indicated).  Because the "Settlement of all claims with APS" was restricted by the clause "per agreement with State," the question becomes what was the agreement.

¶13        The only agreement that the City prosecutor could enter into would be relating to the criminal prosecution.[4]  Here, some three months after the City amended the complaint to limit the dates of the theft of electricity to only February 1, 2011 to June 29, 2011,[5] Taylor made the

---

[4] Although Taylor contends that the prosecutor was APS's ostensible or apparent agent, a prosecutor is not an agent for a victim of a crime. *See* Ariz. R. Crim. P. 39.

[5] Taylor asserts that the term "settlement of all claims with APS" included the period before February 1, 2011 because, before the City amended the complaint, Taylor made a discovery request for how APS made its calculations from 2003 to 2010.  This argument is frivolous.  The City amended the complaint before the parties negotiated a misdemeanor compromise, and any prior discovery request did not transmute the compromise or the amended complaint to cover the period before February 1, 2011.

following offer: "1.  Mr. Taylor will pay the approximately $4,300 alleged to be owed to APS for restitution [and] 2.  The State will dismiss all charges with prejudice."[6]   The prosecutor, after acknowledging that Taylor was seeking a misdemeanor compromise under A.R.S. § 13-3981, accepted the compromise offer, but stated, "a certified check or money order for $4300.00 is to be delivered to any APS business office to be entered onto [Taylor's] APS account by 4p on Wednesday, August 15."   After Taylor made the payment, an APS representative appeared in court, and the judge memorialized the misdemeanor compromise. *See* A.R.S. § 13-3981(C) ("The reasons for the order shall be set forth and entered of record on the minutes and the order shall be a bar to another prosecution for the same offense."). In fact, the misdemeanor compromise stated that APS received full satisfaction for injuries sustained from February 1, 2011 to June 29, 2011 and, as a result, the court then dismissed the action.

¶14        Taylor   has   not   identified   anything   in   the   record demonstrating that the compromise agreement and restitution payment were supposed to represent more than the five months of electricity that he stole as alleged in the amended criminal complaint.  Moreover, Taylor's offer to the City demonstrates the offer was limited to allegations in the amended complaint because he referred to the restitution payment as the amount "alleged to be owed."   Taylor, ultimately, received what he bargained for: (1) he would make a $4300 restitution payment, and (2) the criminal complaint would be dismissed.  Consequently, the trial court did not err in granting summary judgment to APS on Taylor's accord and satisfaction argument.

¶15        Taylor also asserts that the trial court erred by applying the exhaustion of administrative remedies sua sponte because APS did not raise the defense.  The record, however, undermines the argument.  When APS moved for summary judgment to terminate electric services, APS cited, and quoted, in its memorandum of points and authorities various sections of Title 14 of the Arizona Administrative Code, which regulates how a public utility company can terminate a customer's service.  In granting the motion, the court explained the dispute concerned the amount Taylor owed

---

[6] During negotiations with the City prosecutor, Taylor's counsel referred to the prosecuting agency as the State.   Here, the City of Phoenix was prosecuting the case and the criminal complaint was filed in Phoenix Municipal Court.

on his electricity bill from 2003 to 2010 and noted the resolution of the customer bill dispute would be covered by A.A.C. R14-2-212.[7]

¶16        Taylor also argues that the court failed to consider all the evidence.  He appears to assert that a genuine issue of material fact exists because he filed a verified complaint and verified motion for partial summary judgment with supporting exhibits.  Despite the pleadings, Taylor has not identified nor have we found anything in the record demonstrating a genuine issue of material fact to preclude the entry of judgment.  *See* ARCAP 13(a)(7)(A) ("an appellant's opening brief must set forth . . . [a]ppellant's contentions concerning each issue presented for review, with . . . appropriate references to the portions of the record on which the appellant relies").

¶17        Finally, Taylor raises various issues contesting the court's reasoning in denying his motion for partial summary judgment on accord and satisfaction.  Because we have reviewed the ruling de novo and affirm the ruling, we need not address those issues.  *See*, *e.g.*, *McCallister Co. v. Kastella*, 170 Ariz. 455, 457, 825 P.2d 980, 982 (App. 1992) (noting that the denial of summary judgment is not appealable when we affirm summary judgment against that party).

## ATTORNEYS' FEES AND COSTS

¶18        Both parties request an award of attorneys' fees and costs pursuant to A.R.S. §§ 12-341.01 and -349.  Because APS is the prevailing party, we exercise our discretion under § 12-341.01 and award APS its reasonable attorneys' fees and costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

---

[7] The administrative regulation provides if the customer disputes a bill, the customer has to pay the undisputed portion, the utility has to conduct an investigation and report to the customer in writing and inform the customer of his rights to appeal to the Arizona Corporation Commission.  Once the customer receives the report, he has five days to pay the disputed amounts or the utility can terminate service.  A.A.C. R14-2-212(B).

**CONCLUSION**

¶19   We affirm the judgment of the trial court.



Ruth A. Willingham · Clerk of the Court
FILED: ama