IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————————

JOHN MUNIC ENTERPRISES, INC.,
AN ARIZONA CORPORATION,
*Plaintiff/Appellee,*


*v.*


BETH ANNE LAOS AND ENRICO B. LAOS, WIFE AND HUSBAND,
*Defendant/Appellant.*

No. 2 CA-CV 2013-0108
Filed May 6, 2014

———————————————

Appeal from the Superior Court in Pima County
No. C20099937
The Honorable Charles V. Harrington, Judge

**AFFIRMED**

———————————————

COUNSEL

Altfeld & Battaile P.C., Tucson
By Robert A. Kerry
*Counsel for Plaintiff/Appellee*

Waterfall, Economidis, Caldwell, Hanshaw & Villamana, P.C., Tucson
By Corey B. Larson
*Counsel for Defendant/Appellant*

---

## OPINION

Chief Judge Howard authored the opinion of the Court, in which Judge Brammer and Judge Olson concurred.[1]

---

H O W A R D, Chief Judge:

¶1        Beth and Enrico Laos ("the Laoses") appeal from the trial court's denial of their Rule 60(c)(5), Ariz. R. Civ. P., motion for relief from judgment entered in favor of John Munic Enterprises, Inc. ("Munic"), and its denial of their request for a fair market valuation hearing pursuant to A.R.S. § 12-1566.  On appeal, they argue that the court was biased against them, that it erred in applying the Uniform Contribution Among Tortfeasors Act ("UCATA") to prevent a settlement amount between Munic and its attorney from serving as a credit against the judgment entered against them, and that fundamental fairness and equity entitled them to a fair market valuation hearing.  For the following reasons, we affirm.

### Factual and Procedural Background

¶2        The underlying facts are undisputed.  In March 2009, the Laoses sought a loan from Munic in order to avoid the non-judicial foreclosure of a ranch they had purchased.  Munic loaned them $900,000 for this purpose.  When the Laoses failed to repay any amount of the loan, Munic discovered that Beth Laos had misrepresented the value of assets that secured the loan.  Munic sued the Laoses for breach of contract and fraud and was granted summary judgment on both claims and awarded contract damages in the amount of $1,362,305.70, which covered the loan principal, unpaid interest, and attorney fees.  The trial court declined to enter

---

[1]The Hon. J. William Brammer, Jr., a retired judge of this court, and the Hon. Robert Carter Olson, a retired judge of the Arizona Superior Court, are called back to active duty to serve on this case pursuant to orders of this court and the supreme court.

any additional compensatory or punitive damages on the fraud claim.

¶3      Over a year after the judgment was entered, the Laoses discovered Munic had sued its attorney for legal malpractice in connection with his work on the loan and had obtained a confidential settlement amount from him.  The Laoses moved for relief from judgment pursuant to Rule 60(c)(5), arguing that Munic should reveal the amount of the settlement so that it could be credited against the judgment entered against them or, in the alternative, that Munic should be required to enter a satisfaction of judgment.  They also requested a fair market valuation hearing for the value of the ranch.  The trial court denied the motion and the request for a valuation hearing.  We have jurisdiction over the Laoses' appeal pursuant to A.R.S. § 12-2101(A)(2).

## Trial Court Prejudice

¶4      The Laoses first argue the trial court was biased or prejudiced against them because it looked into other cases involving the Laoses pending on the superior court's docket.  However, they did not make this argument below in their motion for reconsideration or through an affidavit requesting the judge's disqualification pursuant to A.R.S. § 12-409.  Additionally, they stipulated to the same trial judge entering an amended judgment to confirm this court's jurisdiction.  "The right to apply for a change of judge for cause is waived if not timely filed."  *Fendler v. Phx. Newspapers Inc.*, 130 Ariz. 475, 481, 636 P.2d 1257, 1263 (App. 1981).  Therefore, they have waived any error.  *See Trantor v. Fredrikson*, 179 Ariz. 299, 300, 878 P.2d 657, 658 (1994) (errors not raised in trial court cannot be asserted on appeal); *Marsin v. Udall*, 78 Ariz. 309, 313, 279 P.2d 721, 724 (1955) (untimely to move to disqualify judge when judgment already rendered on pleadings).

## Settlement Credit

¶5      The Laoses next argue the trial court erred by concluding that UCATA prevented crediting the settlement Munic obtained from its attorney against the judgment entered against them and therefore denying their Rule 60(c)(5) motion.  We review

the denial of a Rule 60(c)(5) motion for an abuse of discretion. *Ezell v. Quon*, 224 Ariz. 532, ¶ 15, 233 P.3d 645, 649 (App. 2010). A court abuses its discretion if it commits an error of law. *City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, ¶ 58, 181 P.3d 219, 236 (App. 2008). We review de novo issues of statutory interpretation. *First Credit Union v. Courtney*, 233 Ariz. 105, ¶ 9, 309 P.3d 929, 931 (App. 2013). "When the statutory language 'is clear and unambiguous,' we look no further and 'assum[e] the legislature has said what it means.'" *Id.*, *quoting Clear Channel Outdoor*, 218 Ariz. 172, ¶ 6, 181 P.3d at 225.

¶6 Rule 60(c)(5) allows a trial court to relieve a party from a judgment if "the judgment has been satisfied, released or discharged." The Laoses claim Munic's settlement with its attorney satisfied, or at least partially satisfied, the judgment against them. But the trial court concluded that "UCATA does apply to this case" because § 12-2501(G) "defines 'property damage' to include 'economic loss[.]'" The court then found that because the liability of Munic's attorney and the Laoses was several, and not joint, the settlement could not be used to offset their judgment under UCATA. *See* § 12-2506(A); *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 507-08, 917 P.2d 222, 236-37 (1996).

¶7 Sections 12-2501 through 12-2509, A.R.S., establish Arizona's version of UCATA. By its plain language, the act applies to persons who become "liable in tort." § 12-2501(A). "The right to contribution under §§ 12-2501 through 12-2504 applies to all tortfeasors whose liability is based on negligence, strict liability in tort or any product liability action, as defined in § 12-681, including warranty." A.R.S. § 12-2509(A). Section 12-2506(A) sets a default rule that in "personal injury, property damage or wrongful death" actions liability is several and "in direct proportion to that defendant's percentage of fault."

¶8 UCATA's purpose is to "abolish joint and several liability in most circumstances" so that "'each *tortfeasor* [is] responsible for paying his or her percentage of fault *and no more*.'" *State Farm Ins. Cos. v. Premier Manufactured Sys., Inc.*, 217 Ariz. 222, ¶ 12, 172 P.3d 410, 413 (2007), *quoting Dietz v. Gen. Elec. Co.*, 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991) (first emphasis added; second

emphasis in *Dietz*). Although § 12-2506(F) defines "[f]ault" as including the "breach of a legal duty," we recently concluded that "[i]n the context of the UCATA . . . breach of a contractual undertaking is [not] included within the meaning of 'breach of a legal duty.'"[2] *Fidelity & Deposit Co. of Md. v. Bondwriter Sw., Inc.*, 228 Ariz. 84, ¶ 24, 263 P.3d 633, 638 (App. 2011). We also determined that "[t]he fact that economic losses are included within the definition of 'property damage' does not compel the conclusion that the comparative fault provisions of UCATA apply to breach of contract claims." *Id.* ¶ 25.

**¶9**        Munic received a judgment in its favor on both its contract and tort claims against the Laoses. The judgment did not include compensatory or punitive damages for the fraud claim. In granting judgment in Munic's favor on the contract claim, however, the trial court awarded damages and attorney fees pursuant to the terms of the contract. Because the Laoses are liable in tort and contract, we must review the substance of the damages at issue to determine whether UCATA was intended to apply to this situation. *See Thomas v. Goudreault*, 163 Ariz. 159, 163-64, 165, 786 P.2d 1010, 1014-15, 1016 (App. 1989) (courts look to substance not labels; analyzing damages involved to determine relevant law).

**¶10**        "To determine whether contract or tort law applies in a specific case, the court must consider the facts of the case, 'bearing in mind the purposes of tort law recovery as contrasted with contract law.'" *Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.*, 143 Ariz. 368, 376, 694 P.2d 198, 206 (1984), *quoting Arrow Leasing Corp. v. Cummins Ariz. Diesel, Inc.*, 136 Ariz. 444, 448, 666 P.2d 544, 548 (App. 1983), *abrogated on other grounds by Phelps v. Firebird Raceway, Inc.*, 210 Ariz. 403, 111 P.3d 1003 (2005). "[C]ontract remedies are designed to redress loss of the benefit of the bargain while tort remedies are designed to protect the public . . . ." *Arrow Leasing Corp.*, 136 Ariz. at 447, 666 P.2d at 547. When a party is induced to enter a contract by fraudulent misrepresentations and justifiably relies on the misrepresentation,

---

[2]Fault also can include a breach of warranty action, but we are not presented with that issue here.

the contract is voidable by that party, but is not automatically void. *See* Restatement (Second) of Contracts § 164(1) (1981) (hereinafter "Restatement (Contracts)"). But whether the party chooses to void the contract or not, it also has an independent tort action for fraud. *Morris v. Achen Constr. Co.*, 155 Ariz. 512, 514, 747 P.2d 1211, 1213 (1987).

¶11 The summary judgment in Munic's favor awarded damages and attorney fees based on the terms of the contract, but did not award additional damages as requested by Munic's fraud claim. Thus, although Munic could have sought to void the contract, Restatement (Contracts) § 164(1), it instead sought to enforce the contract by its terms and receive the benefit of its bargain. The only recovery Munic received in this case thus fits squarely within the type of remedy that contract law is designed to provide. *See Arrow Leasing Corp.*, 136 Ariz. at 447, 666 P.2d at 547; *Thomas*, 163 Ariz. at 165, 786 P.2d at 1016.

¶12 Under these circumstances, we conclude the damages in this case sound primarily in contract. Therefore UCATA was not intended to apply to this situation in which the Laoses were not primarily "liable in tort" pursuant to § 12-2501(A) or liable for a breach of a legal duty causing personal injury, property damage or wrongful death within the meaning of § 12-2506(A), (F). *See Fidelity & Deposit Co. of Md.*, 228 Ariz. 84, ¶ 25, 263 P.3d at 638. Accordingly, the trial court erred in applying UCATA to this case.

¶13 Munic argues we nonetheless may apply the collateral source rule in this contract case and uphold the trial court because our prior case law on this subject was ill-reasoned and is against the weight of authority in other jurisdictions. The Laoses counter that the collateral source rule is strictly a tort doctrine and should not apply to contractual damages. If the court has reached the correct result for the wrong reasons, however, we are bound to affirm its ruling. *Phelps Dodge Corp. v. El Paso Corp.*, 213 Ariz. 400, n.7, 142 P.3d 708, 712 n.7 (App. 2006).

¶14 The collateral source rule is a doctrine, usually applied in personal injury cases, which provides "that benefits received by the plaintiff from a source collateral to the defendant may not be

used to reduce that defendant's liability for damages." Dan B. Dobbs, *Dobbs Law of Remedies* § 3.8(1) (2d ed. 1993) (hereinafter *Remedies*). The Restatement (Second) of Torts § 920A, states the rule as follows:

> (1) A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.
>
> (2) Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.[3]

Thus, the rule prevents a tortfeasor from avoiding liability for damages when the injured party has been compensated by a third party. *Sw. Fiduciary Inc. v. Ariz. Healthcare Cost Containment Sys. Admin.*, 226 Ariz. 404, ¶ 20, 249 P.3d 1104, 1109 (App. 2011).

¶15        This court, however, rejected the rule's application to "ordinary contract cases" in *Grover v. Ratliff*, 120 Ariz. 368, 370, 586 P.2d 213, 215 (App. 1978). In *Grover*, we stated that the "collateral source rule is a concept of damages in tort cases and does not apply to an ordinary breach of contract case" because the rule "'is punitive; contractual damages are compensatory. . . . [I]f applied to an action based on breach of contract, [it] would violate the contractual damage rule that no one shall profit more from the breach of an obligation than from its full performance.'" *Id.*, *quoting Patent Scaffolding Co. v. William Simpson Constr. Co.*, 64 Cal. Rptr. 187, 191 (Ct. App. 1967). Our more recent opinion in *Norwest Bank (Minn.)*,

---

[3]The Laoses noted at oral argument that the comment to this rule discusses four types of collateral sources not used to offset the liability of the tortfeasor. But the rules as stated are not so limited. *See* Restatement (Second) of Torts § 920A & cmt. c.

*N.A. v. Symington* simply quoted *Grover* for the proposition that the rule did not apply in ordinary contract cases, again relying on the reasoning of *Patent Scaffolding*. 197 Ariz. 181, ¶ 36, 3 P.3d 1101, 1109 (App. 2000). But that case left open the possibility that the trial court could refuse to offset a settlement from the deficiency judgment if it concluded the damages were not similar enough, and declined to consider such refusal an application of the collateral source rule. *Id.* ¶ 37.

**¶16** In a case decided just three years after *Patent Scaffolding*, however, the California Supreme Court explicitly overruled the statement that the collateral source rule is "punitive." *Helfend v. S. Cal. Rapid Transit Dist.*, 84 Cal. Rptr. 173, 181 (1970). It concluded the rule was not punitive and, at least in the tort context, has "several legitimate and fully justified compensatory functions" including encouraging the purchase of insurance, aiding the jury in the computation of damages, better approximating full compensation to victims by allowing victims a larger pool of funds from which to pay their attorneys, and in preventing the tortfeasor from benefiting from a victim's thrift. *Id.* at 178-81. Moreover, even in *Patent Scaffolding*, the court had left open the possibility that the rule could be applied in cases of tortious or willful breaches of contract. 64 Cal. Rptr. at 191.

**¶17** Additionally, in *Fleming v. Pima County*, 141 Ariz. 149, 155, 685 P.2d 1301, 1307 (1984), our supreme court refused to offset unemployment compensation against an award of damages for wrongful discharge, characterizing those forms of compensation as a collateral source. The court was unable to deduce whether the damages were awarded under a tort or breach of contract theory. *Id.* at 154, 685 P.2d at 1306. But it reasoned that applying the collateral source doctrine "'encourag[ed] employers to provide more stable employment' and provid[ed] for 'persons unemployed through no fault of their own.'" *Id.* at 155, 685 P.2d at 1307, *quoting* A.R.S. § 23-601. Thus, at least in the wrongful discharge context, our supreme court concluded applying the collateral source rule supported state public policy and did "not give plaintiff a 'windfall.'" *Id.*

**¶18** Although the cases from other jurisdictions are divided, those applying the collateral source rule in contract or similar cases

illustrate that in many contexts application of the rule would serve valid and valuable purposes that also are consistent with contract law principles.  Enforcing the expectation interests of the parties is one of the principal goals of remedying a breach of contract.  *See* Restatement (Contracts) §§ 344(a); 347 cmt. a.  Applying the collateral source rule has been held to advance that goal.  *See State Farm Mut. Auto. Ins. Co. v. Nalbone*, 569 A.2d 71, 75 (Del. 1989) ("[T]he extent to which the collateral source rule should be applied to permit double recovery should depend upon the contractual expectations that underlie the collateral source payment."); *Sunnyland Farms v. Cent. N.M. Elec. Coop., Inc.*, 301 P.3d 387, ¶ 50 (N.M. 2013) (court should honor expectation of parties to collateral source over breaching party); *McConal Aviation, Inc. v. Comm. Aviation Ins. Co.*, 799 P.2d 133, ¶ 21 (N.M. 1990) (breaching party should not reap benefit of negotiations to which it is not a party).

**¶19**		Thus, when a party has paid valuable consideration before the breach to a collateral source to insure against a loss or otherwise to protect its interest, there is no logical reason to deny that party a benefit it has paid for and grant it to another party who neither negotiated for it, paid for it, nor absorbed the opportunity costs of securing it, but who has precipitated the loss.  To do so would subsume the expectations of the third-party contract into the breached contract, devaluing or eliminating the separate benefit of the third-party contract which was supported by separate consideration, and place the breaching party in a better position than if it had performed the contract.  Such a result is illogical and inconsistent with the Restatement, which "implements the policy in favor of allowing individuals to order their own affairs by making legally enforceable promises."  Restatement (Contracts) § 344 cmt. a.  That the breaching party in these cases is forced to pay damages in line with the expectations of the parties actually serves the maxim that a party should not profit more from breach of a contract than its full performance.  *See* Restatement (Contracts) § 347 cmt. e.

**¶20**		And collateral payments resulting from a third-party contract ordinarily are not meant to cover the "judgment debtor's obligation" but, instead, to settle or satisfy the obligations of the third party, whether those arose contractually or otherwise.  *See*

Restatement (Second) of Judgments § 50(2). Thus, it makes little sense, in the name of fulfilling the expectations of the contract, to give the breaching party the benefit of a separate contract negotiated before the breach by the non-breaching party with a third party.[4]

¶21 Furthermore, in the case of breaches of contract having a willful or tortious character, as when the breaching party secures the benefit of a contract by fraud, the collateral source rule prevents any further unjust enrichment of the breaching party. *See GNP Commodities, Inc. v. Walsh Heffernan Co.*, 420 N.E.2d 659, 668 (Ill. App. Ct. 1981) (where contract secured by misrepresentations of breaching party, "no reason [exists] why the collateral source rule should not apply to bar defendants from reducing damages by proof that plaintiff has been compensated from a source to which they have not contributed"). Even courts that generally will not apply the rule in contract cases concede the rule ought to apply in these situations. *See, e.g.*, *Patent Scaffolding*, 64 Cal. Rptr. at 191; *see also Midland Mut. Life Ins. Co. v. Mercy Clinics, Inc.*, 579 N.W.2d 823, 830 (Iowa 1998) (leaving open application of rule in cases of tortious or willful breach). Though the breaching party "may not be a wrongdoer in the same sense as is a tortfeasor" it seems particularly unobjectionable that in these cases "the injured plaintiff [should] recover twice [rather] than that the breaching defendant escape liability altogether." *Hall v. Miller*, 465 A.2d 222, 226 (Vt. 1983); *see*

---

[4] But in "ordinary contract cases," refusing to apply the collateral source rule makes sense where a benefit to the non-breaching party accrues as a direct result of the breaching party's action or where the non-breaching party is able to mitigate its damages after the breach by finding a substitute transaction, as these are all acts within the ordinary contemplation of the contract. *See Remedies* § 12.6(2); *see also All Am. Sch. Supply Co. v. Slavens*, 125 Ariz. 231, 233, 609 P.2d 46, 48 (1980) ("Arizona has long held that damages for breach of contract are those damages which arise naturally from the breach itself or which may reasonably be supposed to have been within the contemplation of the parties at the time they entered the contract."). The Laoses conceded at oral argument that under the facts presented here, this is not a mitigation case.

*also El Escorial Owners' Ass'n v. DLC Plastering, Inc.*, 65 Cal. Rptr. 3d 524, 542 (Ct. App. 2007) (where conduct underlying breach of contract involves tort, collateral source rule applies); *McConal Aviation*, 799 P.2d 133, ¶ 35 ("'If there must be a windfall certainly it is more just that the injured person shall profit therefrom, rather than the wrongdoer shall be relieved of his full responsibility for his wrongdoing.'") (Montgomery, J., specially concurring), *quoting Grayson v. Williams*, 256 F.2d 61, 65 (10th Cir. 1958). Moreover, this approach brings symmetry with the bankruptcy code, which has long refused to discharge contractual debts incurred by fraud. *See* 11 U.S.C. § 523(a)(2)(A).

**¶22** Additionally, the supposed "double recovery" often will prove to be more hypothetical than actual. In many contract cases the plaintiff has assigned its claims to the collateral source or a subrogation has occurred. No double recovery occurs then because the breaching party bears the full burden of its breach; the collateral source can pursue the claim against the breaching party or the breaching party can fully repay the collateral source. *Sunnyland Farms*, 301 P.3d 387, ¶ 49.

**¶23** Persuasive scholarship also supports application of the collateral source rule to at least some contract cases. Professor Dobbs concludes that the division of the courts on this issue "at all is probably best seen as a reflection of the fact that different contract cases may demand different answers." *Remedies* § 12.6(4). Thus, he reasons, courts ought to consider the rule's application using "a case by case analysis," taking into account the "performance called for by the contract, the nature of the breach, the nature of the parties' non-contractual relationship, . . . the nature of the benefits in issue, and the subrogation rights of the collateral source" in determining whether to apply the rule. *Id.* Other scholars have agreed the rule should apply in contract cases, noting that, particularly where the non-breaching party has paid separate consideration to receive the benefit or the plaintiff has subrogated its rights to the collateral source, the rule ought to apply, and that the type of breach involved is an important consideration. *See* Joseph M. Perillo, *The Collateral Source Rule in Contract Cases*, 46 San Diego L. Rev. 705, 708-12, 719-21

(2009); John G. Fleming, *The Collateral Source Rule and Contract Damages*, 71 Calif. L. Rev. 56, 63-73, 77-86 (1983).

**¶24**      Conducting a case by case analysis, we conclude this is not an "ordinary contract case" as in *Grover* and *Symington*. Rather, it is more like *Fleming* in which the analysis of the policies behind the collateral source rule dictates it should apply. Beth Laos was able to secure the contract through her misrepresentations. Munic recovered judgment on both contract and tort theories, but the trial court declined to award "additional damages" for the fraud claim. It did find, however, that the underlying conduct was based on a tort, stating "Beth Anne Laos intentionally misrepresented the amount and status of her assets offered as collateral to [Munic] for the purpose of obtaining a loan from [Munic]." Thus, the eventual breach had a "willful or tortious" character that justifies applying the collateral source rule in this case.

**¶25**      Moreover, fulfilling the expectations of the parties also dictates that we apply the rule. Munic had paid specific consideration to its attorney before the breach with the anticipation that its attorney would protect its interests. Nothing in the record suggests that the Laoses were parties to Munic's agreement with its attorney. When Munic's attorney failed to protect its interests, Munic was able to resort to the law of professional negligence in order to seek a recovery for its losses—a right it had purchased by choosing to hire an attorney in the first place. And, as the Laoses conceded at oral argument, Munic's action against its attorney was not brought to mitigate its contract damages. Allowing the Laoses to benefit from the extra protection Munic had purchased for itself would give them the benefit of a bargain to which they were not a party and for which they had paid no consideration. And it would, at the same time, deprive Munic of a benefit for which it had paid.[5]

---

[5]At oral argument, the Laoses argued they had paid Munic's attorney fees related to this transaction. But they were unable to direct the court to any evidence in the record of that fact. If a fact is not in the record, we may not consider it. *See Schaefer v. Murphey*, 131 Ariz. 295, 299, 640 P.2d 857, 861 (1982). The Laoses also failed to cite any authority that payment of Munic's attorney fees as closing

**¶26**       Additionally, Munic's attorney waived any right it had to an assignment or subrogation of Munic's rights against the Laoses. So, although Munic may have some level of double recovery, that result may be associated with its attorney's determination not to pursue the Laoses rather than any double payment from the Laoses. If that decision turns out to be favorable for Munic, that is a benefit it should reap for advancing Arizona policy by settling its claim; the Laoses should not "reap the benefit of a settlement to which [they were] not a party." *McConal Aviation*, 799 P.2d 133, ¶ 21; *Yollin v. City of Glendale*, 219 Ariz. 24, ¶ 15, 191 P.3d 1040, 1046 (App. 2008) ("'It has always been the policy of [Arizona] law to favor compromise and settlement; and it is especially important to sustain that principle in this age of voluminous litigation.'"), *quoting Dansby v. Buck*, 92 Ariz. 1, 11, 373 P.2d 1, 8 (1962).

**¶27**       Furthermore, the settlement resolved potential professional negligence liability, which was a separate legal wrong susceptible to damages beyond the scope of the contract. *See McConal Aviation*, 799 P.2d 133, ¶ 13 (settled negligence claim "would not have represented double recovery" on separate breach of contract claim). This is consistent with the trial court's conclusion that the liability of the Laoses and Munic's attorney was several, not joint.

**¶28**       Thus, to the extent the Laoses rely on *Pasco Industries, Inc. v. Talco Recycling, Inc.*, 195 Ariz. 50, ¶¶ 72-74, 985 P.2d 535, 550 (App. 1998), and *American Home Assurance Co. v. Vaughn*, 21 Ariz. App. 190, 192, 517 P.2d 1083, 1085 (1974), for the proposition that a plaintiff cannot recover twice for the same wrong, those cases are inapposite because Munic has recovered for different wrongs. The Laoses also rely on *Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn*, 184 Ariz. 120, 907 P.2d 506 (App. 1995). But in that case this court allowed a settlement with a joint tortfeasor to reduce a

---

costs would make them parties to or beneficiaries of the contract. *See Ness v. W. Sec. Life Ins. Co.*, 174 Ariz. 497, 503, 851 P.2d 122, 128 (App. 1992) (argument waived if made without supporting authority).

judgment against another joint tortfeasor. *Id.* at 138-40, 907 P.2d at 524-26. Munic's attorney was not a joint tortfeasor with the Laoses and thus *Hyatt Regency* is inapposite. Accordingly, the trial court did not err in refusing to offset Munic's settlement with its attorney against the judgment entered against the Laoses.

### Fair Market Valuation Hearing

¶29 The Laoses finally argue that the trial court erred in denying their request for a fair market valuation hearing pursuant to A.R.S. § 12-1566 to determine the value of their foreclosed home. They maintain "fairness dictates they be informed if the Judgment had been satisfied or extinguished before such obligation to request a valuation hearing should arise." "Because this issue involves statutory interpretation and application, it is a question of law that we review *de novo*." *Wells Fargo Credit Corp. v. Tolliver*, 183 Ariz. 343, 345, 903 P.2d 1101, 1103 (App. 1995).

¶30 Section 12-1566(C) requires that a judgment debtor request a fair market valuation hearing within thirty days of the sale of real property and does not authorize the court to extend the time. The Laoses did not make a timely request. And they have not provided any authority for their position that the trial court should have extended this deadline in fairness, or had the authority to do so. "Arguments unsupported by any authority will not be considered on appeal." *Ness v. W. Sec. Life Ins. Co.*, 174 Ariz. 497, 503, 851 P.2d 122, 128 (App. 1992). Moreover, they concede that failing to request the hearing timely "may have been the fault of their then existing counsel." Their request, therefore, has no connection to their discovery of Munic's settlement with its attorney. Accordingly, we reject this argument.

### Attorney Fees

¶31 The Laoses request their attorney fees on appeal pursuant to A.R.S. § 12-341.01 and Rule 21, Ariz. R. Civ. App. P. Because the Laoses were not successful in this appeal, we deny their request. Munic also requests its fees and costs pursuant to § 12-341.01, Rule 21, and the contract. We award Munic its fees and costs

pursuant to the terms of the contract upon its compliance with Rule 21.

## Disposition

**¶32** For the foregoing reasons, we affirm the judgment of the trial court.