PRESENT:  Lemons, C.J., Mims, McClanahan, Powell, Kelsey, and McCullough, JJ., and Millette, S.J.

DOMINION RESOURCES, INC., ET AL.

                                              OPINION BY
v.  Record No. 181061                 JUSTICE WILLIAM C. MIMS
                                          April 11, 2019

ALSTOM POWER, INC.

### UPON A QUESTION OF LAW CERTIFIED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

The United States District Court for the District of Connecticut entered a certification order asking this Court to answer a determinative question of law in a proceeding pending before it.  Pursuant to our jurisdiction under Article VI, Section 1 of the Constitution of Virginia and Rule 5:40, we accepted the following question:

> Does Virginia law apply the collateral source rule to a breach of contract action where the plaintiff has been reimbursed by an insurer for the full amount it seeks in damages from the defendant?

### I.  BACKGROUND AND MATERIAL PROCEEDINGS BELOW

The certified question of law arises from a contract dispute between the plaintiffs, Dominion Resources Services, Inc., Dominion Resources, Inc., Dominion Energy, Inc., Dominion Generation Corp., and Dominion Technical Solutions, Inc. (collectively, "Dominion Resources"), and the defendant, Alstom Power, Inc. ("Alstom").  The contract at issue (the "Alliance Agreement") is governed by Virginia law and concerned services performed by Alstom at Dominion Resources' power-generation facilities.  It contained mutual indemnities as well as requirements that Alstom obtain certain insurance policies.  Pursuant to those requirements, Alstom obtained an insurance policy with an aggregate limit of $5 million (the "Zurich policy") and an excess policy with an $18 million limit (the "Allianz policy"), both naming Dominion Resources as an additional insured.  Both are "eroding" policies, in which the

costs of defending a lawsuit are considered part of the loss. Additionally, Dominion Resources independently obtained an excess insurance policy from Associated Electric & Gas Insurance Services ("AEGIS"). Alstom was not involved in securing the AEGIS policy, nor did it pay any portion of the AEGIS policy premium.

A boiler accident at a Dominion Resources power-generation facility operated under the Alliance Agreement injured five workers, three fatally. The workers and estates filed a lawsuit against Dominion Resources, Alstom, and others, which ultimately resulted in a settlement agreement. Dominion Resources paid more than $5 million to settle the claims and incurred more than $9.9 million in defense expenses. As a result of the litigation and settlement, Dominion Resources received a total of more than $5 million from the Zurich and Allianz policies. It additionally received payment from the AEGIS policy for the remaining expenses it incurred in defending and settling the litigation.[1] The parties agree that the combination of insurance payments from the Zurich, Allianz, and AEGIS policies have fully reimbursed Dominion Resources for the costs it incurred in defending and settling the litigation.

Pursuant to language in the Alliance Agreement requiring each of Dominion Resources' and Alstom's "respective insurers to waive all rights of recovery against each other, whether in contract, tort (including negligence and strict liability) or otherwise," AEGIS has not brought any claims against Alstom's insurers for reimbursement of the amounts it paid to Dominion Resources. Dominion Resources has the option to reimburse AEGIS if it recovers any damages from Alstom in the underlying action. If Dominion Resources recovers and chooses to

---

[1] Although the Allianz policy had a limit of $18 million, Dominion Resources accepted $2.52 million to settle its claims against Allianz under that policy. The AEGIS policy was thus necessary to reimburse Dominion Resources for its remaining litigation expenses.

2

reimburse AEGIS, doing so would improve its loss history with AEGIS and reduce its premiums for future insurance policies.

In the underlying case, Dominion Resources alleged that Alstom breached the Alliance Agreement in two ways: (1) by failing to defend Dominion Resources in the boiler accident litigation, and (2) by obtaining eroding rather than noneroding insurance policies. Dominion Resources sought as damages the sum it expended in defending and settling the boiler accident litigation not covered by the Zurich and Allianz Policies. In other words, Dominion Resources sought to recover from Alstom the same amount it received from the AEGIS policy.

Alstom moved to dismiss Dominion Resources' action on several grounds, including that Dominion Resources has suffered no recoverable damages because AEGIS has already paid the full amount sought. Alstom argued that Dominion Resources should be barred from obtaining a double recovery and that the collateral source rule does not apply in contract actions. Dominion Resources agreed that AEGIS reimbursed it but contended that the collateral source rule applies in this case to prevent the district court from considering the AEGIS reimbursement.

Recognizing that no controlling Virginia precedent has addressed whether the collateral source rule applies to breach-of-contract actions and that "whether the collateral source rule applies has the capacity to dispose of all of Dominion Resources' claims in the case," the district court issued a certification order requesting that this Court consider this dispositive question of law.[2] We now consider the question.

_____

[2] The district court explained that "[i]f the collateral source rule does not apply to breach of contract actions such as this, Dominion Resources would be barred from obtaining the relief that it seeks, and summary judgment would be granted for Alstom on all of Dominion Resources' claims." It acknowledged that resolution of the question in the affirmative would not resolve the dispute, nor would the issue be determinative of Alstom's counterclaims. Rule 5:40(a) requires that the question be "determinative in any proceeding pending before the certifying court." The certified question in this case is determinative because if the collateral

3

II.  ANALYSIS

The collateral source rule as previously applied in Virginia provides that "compensation or indemnity received by a tort victim from a source collateral to the tortfeasor may not be applied as a credit against the quantum of damages the tortfeasor owes." *Schickling v. Aspinall*, 235 Va. 472, 474 (1988).  This Court first applied the rule in an 1877 wrongful death case, holding that evidence of a life insurance payment for the benefit of the decedent's family could not be admitted into evidence.  *Baltimore & Ohio R.R. Co. v. Wightman*, 70 Va. (29 Gratt.) 431, 446 (1877), *rev'd on other grounds sub nom Baltimore & Ohio R.R. Co. v. Koontz*, 104 U.S. 5 (1881).  The Court observed that the "mere fact that the family of the deceased received money from some other source would not justly influence the measure of compensation" the defendant company owed for injuries attributable to it.  *Id.*  The fact of insurance was an inappropriate consideration in determining damages because "[t]he party effecting the insurance paid the full value for it, and there is no equity in the claim of the defendant to the benefit of a contract for which it gave no consideration."  *Id.*

Since then, and for similar reasons, Virginia has consistently recognized the collateral source rule in tort cases.  *See Bullard v. Alfonso*, 267 Va. 743, 749 (2004); *Acuar v. Letourneau*, 260 Va. 180, 192 (2000); *Schickling*, 235 Va. at 475; *Walthew v. Davis*, 201 Va. 557, 563 (1960); *Johnson v. Kellam*, 162 Va. 757, 764 (1934); *see also* Code § 8.01-35 (providing that provable damages for lost income in personal injury and death cases shall not be reduced because of reimbursement to the plaintiff or decedent from any collateral source, nor the fact of reimbursement admitted into evidence).  Although early cases limited the rule's application to

source rule does not apply in the underlying breach-of-contract action, then the district court will enter summary judgment for Alstom and dismiss all of Dominion Resources' claims. *See Small v. Fed. Nat. Mortg. Ass'n*, 286 Va. 119, 125 (2013).

4

insurance payments in tort claims, "[l]ater cases have applied the rule to social security benefits, public and private pension payments, unemployment and workers' compensation benefits, vacation and sick leave allowances, and other payments made by employers to injured employees, both contractual and gratuitous." *Bullard*, 267 Va. at 748 (quoting *Schickling*, 235 Va. at 474); *see also* 22 Am. Jur. 2d *Damages* § 405 (2019); 4 Fowler V. Harper et al., Harper, James and Gray on Torts § 25.22, at 801–04 (3d ed. 2007). This Court has nevertheless recognized limitations on the rule's scope. For instance, it does not apply to settlement proceeds from one of multiple joint tortfeasors because the settlement implicitly attributes part of the fault to that individual; as such, the settlement amount is deducted from the amount the remaining tortfeasors owe. *Acordia of Virginia Ins. Agency, Inc. v. Genito Glenn, L.P.*, 263 Va. 377, 387–88 (2002) (citing *Sweep v. Lear Jet Corp.*, 412 F.2d 457, 461 (5th Cir. 1969)); *see also* Restatement (Second) of Torts § 920A (1979).

Until now, the question of whether the collateral source rule applies to breach-of-contract actions in Virginia has not been squarely before this Court. In *Schickling*, this Court observed that it has never "had occasion to consider whether the collateral source rule applies to contract cases." 235 Va. at 475. It declined to do so in that case because the defendant, not the plaintiff, received the collateral compensation, which rendered the rule "inapposite." *Id.* Later, in *Acuar*, this Court acknowledged that "neither the tort policy of this Commonwealth nor the collateral source rule was implicated" in a case involving only construction of an insurance contract, but applied the rule in the case then before it because it was "reviewing a tort claim, not a contractual one, by an injured party against a wrongdoer." 260 Va. at 191. Most recently, this Court stated that it has "never applied the rule outside the tort context" in a footnote explaining why consideration of the rule was unnecessary in that breach-of-contract case. *CPM Virginia, LLC v.*

5

*MJM Golf, LLC*, 291 Va. 73, 80 n.1 (2015).  Specifically, the Court declined to address one party's argument that the collateral source rule should remain limited to "its presently recognized boundaries" because it resolved the case on the narrower ground that no breach of contract warranties occurred.  *Id.*  Relying on these statements declining to reach the issue, Alstom contends that Virginia law does not recognize the collateral source rule in breach-of-contract actions.  This view reads too much into our prior cases.  A review of the justifications this Court has cited in applying the collateral source rule indicates it may apply in certain contract situations.

A fundamental principle of damages is that a plaintiff may not receive a double recovery for a single injury.  *See Wilkins v. Peninsula Motor Cars, Inc.*, 266 Va. 558, 561 (2003) ("[W]hen the claims, duties, and injuries are the same, duplicative recovery is barred."); *Joyner v. Graybeal*, 204 Va. 543, 546 (1963) (rejecting potential double recovery as "inequitable"); *Smith v. Hensley*, 202 Va. 700, 705 (1961) (recognizing a rule against double recoveries).  This is because the essential purpose of both tort and contract damages is compensation.  "The cardinal principle of damages in Anglo-American law is that of *compensation* for the injury caused to the plaintiff by the defendant's breach of duty."  Harper et al., *supra*, § 25.1, at 574.  Accordingly, this Court has held that "[d]amages are awarded in tort actions to compensate the plaintiff for all losses suffered by reason of the defendant's breach of some duty imposed by law to protect the broad interests of social policy."  *Kamlar Corp. v. Haley*, 224 Va. 699, 706 (1983); *see Acuar*, 260 Va. at 192 ("[T]he purpose of compensatory damages . . . is to make a tort victim

6

whole."). Similarly, damages for breach of contract "are subject to the overriding principle of compensation."[3] *Kamlar Corp.*, 224 Va. at 706.

Damages in both tort and contract cases thus exist only to compensate a plaintiff for the injury suffered, not to leave that plaintiff better off because of the injury. *See Schickling*, 235 Va. at 474–75 (noting that it is a "principle[] of tort law" that "a plaintiff is entitled to compensation sufficient to make him whole, but no more"); *Orebaugh v. Antonious*, 190 Va. 829, 834 (1950) ("A plaintiff is not allowed to recover for a breach of contract more than the actual loss sustained by him, nor is he allowed to be put in a better position than he would have been had the wrong not been done and the contract not been broken.").

The collateral source rule is a narrow exception to both the default rule against double recoveries and the principle that compensatory damages cannot leave a plaintiff better off than before the injury. Whenever a plaintiff has a source of recovery collateral to the defendant, it will either (1) give the plaintiff a double recovery and leave him or her in a better financial position than before the injury, or (2) permit the defendant to escape full liability for all damages resulting from his wrong. *Schickling*, 235 Va. at 474–75; *see also Burks v. Webb*, 199 Va. 296, 304 (1957) ("[A] defendant, who by his negligence has injured another, owes to such other full compensation for the injuries inflicted by him, and the payment for those injuries from a collateral source, in no way relieves such defendant of his obligation."). Thus, in the tort context, this Court has often explained that the collateral source rule implements a public policy allocating the double recovery to the plaintiff:

---

[3] Although punitive damages may be awarded in appropriate tort cases to punish and deter egregious wrongdoing, *Kamlar Corp.*, 224 Va. at 706, they are awarded "*in addition to* full compensation, and [are] something not given as [the plaintiff's] due, but for the protection of the public," *Norfolk & W. R.R. Co. v. Neely*, 91 Va. 539, 540 (1895) (emphasis added).

> A plaintiff who receives a double recovery for a single tort enjoys a windfall; a defendant who escapes, in whole or in part, liability for his wrong enjoys a windfall. Because the law must sanction one windfall and deny the other, it favors the victim of the wrong rather than the wrongdoer.

*Acuar*, 260 Va. at 193 (quoting *Schickling*, 235 Va. at 475).

Unlike a tortfeasor, one who breaches a contract is liable for only those damages that would not have occurred but for the breach—a plaintiff's post-breach mitigation, including favorable substitute transactions, will reduce the breaching party's liability. Restatement (Second) of Contracts § 347 cmt. e (1981). For this reason, some commentators have suggested that "[t]he case for the application of the collateral source rule is less compelling in a case involving breach of contract than in the case of a tort." 22 Am. Jur. 2d *Damages* § 407.

Nevertheless, a similar rationale supports the rule's application in at least some contract cases: enforcing the parties' expectation interests in the contracts they have entered. *See Filak v. George*, 267 Va. 612, 618 (2004) ("[T]he major consideration underlying contract law is the protection of bargained for expectations."). We find the discussion of contract expectation interests with respect to the collateral source rule in *John Munic Enterprises, Inc. v. Laos*, 326 P.3d 279 (Ariz. Ct. App. 2014), to be persuasive. In that case, the Court of Appeals of Arizona considered whether a settlement between John Munic Enterprises and its attorney could serve as a credit to a judgment entered against the Laos family. *Id.* at 281–82. The court determined that the damages at issue sounded in contract. *Id.* at 283. It then went on to address whether the collateral source rule applied to justify upholding the trial court's ruling. *Id.* As in the case at bar, one party contended that the rule is strictly a tort doctrine, while the other argued it is more generally applicable based on its justifications. *Id.* at 284. The court agreed with the latter party,

noting that "[a]pplying the collateral source rule has been held to advance" the goal of "[e]nforcing the expectation interests of the parties." *Id.* at 285. It reasoned:

> [W]hen a party has paid valuable consideration before the breach to a collateral source to insure against a loss or otherwise to protect its interest, there is no logical reason to deny that party a benefit it has paid for and grant it to another party who neither negotiated for it, paid for it, nor absorbed the opportunity costs of securing it, but who has precipitated the loss. To do so would subsume the expectations of the third-party contract into the breached contract, devaluing or eliminating the separate benefit of the third-party contract which was supported by separate consideration, and place the breaching party in a better position than if it had performed the contract.

*Id.* The court concluded that "it makes little sense, in the name of fulfilling the expectations of the contract, to give the breaching party the benefit of a separate contract negotiated before the breach by the non-breaching party with a third party." *Id.*

This analysis echoes this Court's reasoning when the collateral source rule was first recognized in *Wightman*: "[t]he party effecting the insurance paid the full value for it, and there is no equity in the claim of the defendant to the benefit of a contract for which it gave no consideration." 70 Va. (29 Gratt.) at 446. This Court has consistently cited this and similar reasoning with approval since then. *See, e.g.*, *Acordia of Virginia Ins. Agency, Inc.*, 263 Va. at 387 ("If the plaintiff was himself responsible for the benefit, as by maintaining his own insurance or by making advantageous employment arrangements, the law allows him to keep it for himself. If the benefit was a gift to the plaintiff from a third party or established for him by law, he should not be deprived of the advantage that it confers." (quoting Restatement (Second) of Torts § 920A (1979))).

We additionally note that, particularly in the contract context, "the supposed 'double recovery' often will prove to be more hypothetical than actual." *John Munic Enterprises, Inc.*,

9

326 P.3d at 286. In many collateral source rule cases, the real issue is not whether to overcompensate the plaintiff—it is instead whether the breaching defendant or the collateral source should be primarily responsible for compensation. 3 Dan B. Dobbs, Law of Remedies § 12.6(4), at 158 (2d ed. 1993). Frequently in contract cases implicating the rule, the plaintiff has either assigned its claims or otherwise is liable to reimburse the collateral source, or the collateral source has a claim of subrogation against the defendant. There is no double recovery in such cases because the breaching defendant bears the full burden of the breach while the plaintiff receives only one award: either the collateral source, after reimbursing the plaintiff, pursues the claim against the defendant; the plaintiff pursues the claim against the defendant and repays the collateral source; or the collateral source, after reimbursing the plaintiff, obtains subrogation from the defendant.

Virginia's recognition that the collateral source rule may apply in the breach-of-contract context does not mean that the rule would apply in every case, or even most cases. As one leading treatise observes,

> Contract cases are varied and there is no essential reason that they should all be treated alike on the collateral source issue merely because they contain contract elements. . . . [D]ifferent contract cases may demand different answers. The performance called for by the contract, the nature of the breach, the nature of the parties' non-contractual relationship, and the nature of the benefits in issue, and the subrogation rights of the collateral source payor may all be relevant in determining whether to apply the collateral source rule.

Dobbs, *supra*, § 12.6(4), at 157. Accordingly, we recognize that "[t]he equities, practicalities and economics of different situations suggest that at least for the present, a case by case analysis is required." *Id.*

10

## III. CONCLUSION

The same rationales supporting this Court's long recognition of the collateral source rule in tort cases also support the rule's application in certain breach-of-contract actions. Whether the rule applies to a given case, however, requires a case-specific determination of whether the parties' expectations, in light of those rationales, support the rule's application. Because Virginia law thus recognizes that the rule can apply to breach-of-contract cases, we answer the certified question in the affirmative.

*Certified question answered in the affirmative.*