NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DAVID A., *Appellant*,

*v.*

ANAYZA M., D.A., *Appellees*.

No. 1 CA-JV 21-0092
FILED 10-14-2021

Appeal from the Superior Court in Yuma County
No. S1400JS20190285
The Honorable Stephen J. Rouff, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Law Offices of Penny Higginbottom, Yuma
By Penny Lynn Higginbottom
*Counsel for Appellant*

Yuma County Attorney's Office, Yuma
By William J. Kerekes
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the court, in which Presiding Judge D. Steven Williams and Judge James B. Morse Jr. joined.

---

**G A S S**, Judge:

¶1        Father appeals from the superior court's order terminating his parental rights to his child, D.A. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        In 2009, father and mother married, and over the next two years, they lived in Arizona. D.A. was born in 2010. Mother and father are D.A.'s genetic parents. During the marriage, mother and D.A. occasionally spent time in Mexico. After the parents separated in 2011, mother and D.A. moved to Mexico to live with D.A.'s maternal grandmother. In 2012, father spent only Christmas Day with D.A. Mother invited father to D.A.'s birthday party in 2013, but he did not go.

¶3        In 2013, mother began dissolution proceedings in Mexico. As part of those proceedings, she offered father parenting time. Because father did not consent to the divorce, the Mexican court did not grant it.

¶4        In 2015, mother obtained an Arizona divorce. The superior court found it lacked jurisdiction to grant father parenting time because Mexico was D.A.'s home state, but it ordered father to pay $279 in monthly child support. Despite that order, father never paid child support. After 2012, father had one brief visit with D.A. in 2016. Between 2014 and 2020, father did not give D.A. any gifts.

¶5        Later in 2015, mother married her current husband. In 2018, mother and D.A. moved to Yuma to live with her husband. The next year, mother petitioned to terminate father's parental rights to D.A. based on abandonment under A.R.S. § 8-533.B.1. A family specialist submitted a social study concluding it would be in D.A.'s best interests to terminate father's parental rights, and after a March 2021 hearing, the superior court did so. Father timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 8-235, 12-120.21.A, and 12-2101.A.1.

## ANALYSIS

### I.    Abandonment.

¶6         The superior court may terminate a parental relationship upon proof by "clear and convincing evidence" of one statutory ground under A.R.S. § 8-533. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 4 (App. 2002). "Clear and convincing" means the grounds for termination are "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284–85, ¶ 25 (2005) (citation omitted). The superior court also must find by a preponderance of the evidence termination is in the child's best interests. *Id.* at 288, ¶ 41. On appeal, this court "view[s] [the] facts in the light most favorable to affirming the [superior] court's findings." *Maricopa Cnty. Juv. Action No. JV-132905*, 186 Ariz. 607, 608 n.1 (App. 1996). This court accepts "the [superior] court's findings of fact unless no reasonable evidence supports those findings, and . . . will affirm a [termination] order unless it is clearly erroneous." *Jesus M.*, 203 Ariz. at 280, ¶ 4. This court does not reweigh the evidence but simply determines whether sufficient evidence supports the superior court's ruling. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

¶7         Under A.R.S. § 8-531(1), abandonment means:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

"[A]bandonment is measured not by a parent's subjective intent, but by the parent's conduct." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 18 (2000).

¶8         Mother argues the record below supports the superior court's abandonment determination. We agree. The superior court found that after the parents separated in 2011, father visited D.A. only a few times, did not pay any child support, and did not provide D.A. with any gifts, cards, letters, food, clothing, or shoes. The record supports these findings.

¶9         Father argues mother interfered with his relationship with D.A. The record does not support father's contention. *See Calvin B. v.*

*Brittany B.*, 232 Ariz. 292, 296–99, ¶¶ 21–32 (App. 2013). Because the parent in *Calvin* went to great lengths to maintain a relationship with the child, this court held the parent in *Calvin* did not abandon the child. *See id.* at 297–98, ¶¶ 25–31.

¶10 Unlike the parent in *Calvin*, father here did not "vigorously assert[] his legal rights to see his son." *See id.* at 298, ¶ 29 (citations and internal quotation marks omitted). Specifically, unlike the parent in *Calvin*, father here did not have "ten visits . . . a year," did not petition "for joint custody, complaining [mother] did not allow [father] enough time with" the child, and did not seek and obtain an order "establishing a fixed amount of parenting time." *See id.* at 297, ¶¶ 22–23, 25. Further, unlike *Calvin*, mother here did not seek an order of protection barring father from visiting with their child. *See id.* at ¶ 23.

¶11 Instead, after the parents here separated, mother lived with D.A.'s maternal grandmother in Mexico. Though mother changed D.A.'s name when he began school in about 2015, mother explained she did so because father's former girlfriend warned her father planned to harm D.A. Even so, father knew where mother and D.A. lived, but he visited D.A. only twice before 2018, when mother and D.A. returned to Arizona. Additionally, when mother attempted to divorce father in Mexico, she offered him parenting time, but father declined the offer.

¶12 After mother and D.A. moved to Yuma in 2018, father knew in which apartment complex they were living. Still, he did not visit D.A. or enforce his parental rights by establishing parenting time through legal process or otherwise. Father argues he took legal action to assert his parental rights in 2018 when he filed a family law action in Yuma County Superior Court. We, however, cannot consider this evidence because it was not before the superior court. *See John Munic Enters. v. Laos*, 235 Ariz. 12, 20, ¶ 25 n.5 (App. 2014) (this court may not consider facts outside the record). Even if we could consider the filing, the record shows father failed to establish and maintain a connection with D.A. for far more than 6 months.

¶13 Father also asserted he tried to visit D.A. various times during 2015, but each time, mother would call the police or send D.A. to a friend's house so father could not find him. Father testified he gave mother's relatives gifts for D.A. until 2014, including clothes and food, but mother would not give them to D.A. Regardless, father conceded after 2015, he made no efforts to establish a relationship with D.A. Further, as we previously discussed, if father truly believed mother was attempting to

prevent him from visiting D.A., father could have taken legal actions to assert his parental rights but failed to do so. *See supra* ¶ 12.

¶14 As the above discussion shows, the facts here call for a different outcome from *Calvin*. Specifically, father did not sufficiently show "throughout the child's life," he "actively sought more involvement than [mother] would allow." *See Calvin*, 232 Ariz. at 297, ¶ 23 ("[n]otwithstanding the order of protection, [the parent] intermittently asked to see [the child]"). And mother did not interfere or restrict father "from interacting with their child and then petition to terminate" father's rights based on abandonment. *See id*. at ¶ 21.

¶15 The superior court was in the best position to resolve any conflicts in the evidence. *See Jesus M.*, 203 Ariz. at 280, ¶ 4. So, on this record, we conclude mother's actions did not rise to the level of interference excusing father's failure to maintain contact with D.A. *See Calvin*, 232 Ariz. at 296–97, ¶¶ 21–25 (when mother denied or frustrated father's repeated efforts to contact child, father asked the superior court for relief). Thus, we affirm the order terminating father's parental rights to D.A.

## II. Ineffective Assistance of Counsel.

¶16 Father also argues his trial counsel provided him with ineffective assistance of counsel. Even if we assume a claim of ineffective assistance of counsel will lie in a termination proceeding, father's claims fail. *See Royce C. v. Dep't of Child Safety*, ___ Ariz. ___, ___, ¶ 11, 2 CA-JV 2021-0005, 2021 WL 3928610, at *3 (Ariz. App. Sept. 2, 2021) (explaining "if [an ineffective assistance of counsel claim] were to exist, the parent challenging a termination order would only be entitled to relief if the parent could satisfy, at minimum, the test set forth in *Strickland v. Washington*"); *see also Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984) (ruling a criminal defendant only prevails under an ineffective assistance of counsel claim if the court determines the defense attorney's "acts or omissions were outside the wide range of professionally competent assistance[,]" and the defendant can establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

¶17 Father does not demonstrate his counsel's alleged errors could have made a determinative difference in the outcome of his termination proceeding. Because father does not contend anything his counsel did or did not do would have countered the undisputed evidence of his failure to contact or support D.A. regularly since 2014, we reject this

argument. *See* A.R.S. § 8-531(1) ("[f]ailure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment").

**CONCLUSION**

¶18        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA