IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**ROGER H. CONTRERAS,**
*Appellee,*

*v.*

**NANCY BOURKE,**
*Appellant.*

No. CV-24-0217-PR
**Filed August 21, 2025**

Appeal from the Superior Court in Cochise County
The Honorable Timothy B. Dickerson, Judge (Retired)
No. DO200901390
**REVERSED AND REMANDED WITH INSTRUCTIONS**

Opinion of the Court of Appeals, Division Two
258 Ariz. 223 (App. 2024)
**VACATED**

COUNSEL:

Danette R. Pahl (argued), Pahl & Associates, Tucson, Attorney for Roger
H. Contreras

Nancy Bourke (argued), In Propria Persona

JUSTICE CRUZ authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ and JUSTICES BOLICK, BEENE, MONTGOMERY and KING joined.

JUSTICE CRUZ, Opinion of the Court:

**¶1**         Arizona judges must disqualify themselves in any proceeding in which their impartiality "might reasonably be questioned."  Ariz. R. Sup. Ct. 81, Code of Judicial Conduct ("CJCR") Rule 2.11(A).  In this case, after other judicial officers in the county had recused themselves in an ongoing family court matter, the presiding judge—who had also previously recused—re-entered the case to rule on a motion to designate one of the parties as a vexatious litigant.

**¶2**         We hold that once a judge recuses in a case, that judge remains disqualified from presiding further in that same case unless the judge first articulates the reasons why recusal is no longer required and allows the parties an opportunity to object.

## BACKGROUND

**¶3**         In December 2009, Roger Contreras and Nancy Bourke initiated a marriage dissolution action.  The superior court entered a decree of dissolution in April 2011, after trial.  Significant post-decree litigation followed.

**¶4**         In February 2020, all Cochise County Superior Court judges, including Judge Timothy Dickerson, recused from participation in the matter.  Notably, Judge Dickerson did not provide a reason on the record for his recusal.  The case was reassigned to a judge in Pima County.

**¶5**         In January 2021, this Court appointed Judge Dickerson to be the presiding judge of the Cochise County Superior Court.  In that role, he appointed Contreras as a justice of the peace pro tempore in November 2022.  He reappointed Contreras twice, in May 2023 and August 2023.

**¶6**         In December 2022, shortly after his first appointment by Judge Dickerson, Contreras filed a motion to have Bourke designated a vexatious litigant.  Vexatious litigant determinations are generally made by the presiding judge of the superior court in the county where the motion is

filed, rather than by the judge assigned to the particular case. *See* A.R.S. § 12-3201(A). A vexatious litigant determination is no insignificant matter. It restricts a litigant's participation in a case because "a vexatious litigant may not file a new pleading, motion or other document without prior leave of the court." § 12-3201(B). Despite having previously recused himself from the underlying dissolution case, Judge Dickerson chose to entertain the motion. He provided no explanation on the record as to the basis of the prior recusal or why recusal was no longer necessary.

¶7 In addressing the vexatious litigant motion, Judge Dickerson found no evidentiary hearing was necessary but permitted supplemental briefing. Bourke did not file a motion to disqualify but noted in passing that Judge Dickerson had previously recused in the case. Bourke stated that Contreras "wishes for the Presiding Judge, who already recused himself due to conflicts of interest, to address the merits of the Motion, instead of the assigned judicial officer." In May 2023, Judge Dickerson ruled on the motion, designating Bourke a vexatious litigant.

¶8 Bourke appealed the vexatious litigant determination. *See Contreras v. Bourke*, 258 Ariz. 223 (App. 2024). In a split decision, the court of appeals affirmed the trial court ruling, holding that Bourke had waived any challenge to Judge Dickerson's participation by failing to timely seek disqualification under A.R.S. § 12-409, Arizona Rule of Family Law Procedure 6.1(c), or Arizona Rule of Civil Procedure 42.2(d). *Id.* at 226–27 ¶¶ 8, 10.

¶9 The majority did not address Bourke's claim that, aside from his recusal and re-entry into the case, Judge Dickerson's earlier appointment of Contreras as a justice of the peace pro tempore might raise an independent basis to find a conflict requiring recusal. The dissent opined that under CJCR 2.11(A), given his prior recusal, Judge Dickerson had an independent duty to recuse himself from deciding the vexatious litigant motion and, § 12-409 notwithstanding, waiver should not apply. *Id.* at 233 ¶¶ 38–39, 237 ¶ 60 (Sklar, J. dissenting).

¶10 We granted review to resolve these issues of first impression and statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

**DISCUSSION**

**A.** **Prior Recusal and Re-Entry**

**¶11**        Bourke claims Judge Dickerson's recusal from participating in the dissolution action due to a purported conflict made him ineligible to later re-enter the case in his new capacity as the county's presiding judge to decide the vexatious litigant motion.

**¶12**        We review de novo the interpretation of court rules. *State v. Whitman*, 234 Ariz. 565, 566 ¶ 5 (2014). This Court interprets judicial ethics rules using principles of statutory construction. *See Phillips v. O'Neil*, 243 Ariz. 299, 301 ¶ 8 (2017). "When a statute's plain language is unambiguous in context, it is dispositive." *In re Drummond*, 257 Ariz. 15, 18 ¶ 5 (2024).

**¶13**        The CJCR 2.11(A) provides that:

> (A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

> (1)  The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

Comments 1 and 2 to CJCR 2.11 provide further clarification, stating in relevant part:

> 1.  Under this rule, a judge is disqualified whenever the judge's impartiality *might reasonably be questioned*, regardless of whether any of the [enumerated conflicts in paragraphs (A)(1) through (5)] apply.

> 2.  A judge's obligation not to hear or decide matters in which disqualification is required applies *regardless of whether a motion to disqualify is filed*.

(Emphases added.)

**¶14**        This Court articulated the standard to apply when deciding

4

whether a judge's impartiality might reasonably be questioned in *State v. Smith*, 203 Ariz. 75, 79 ¶ 16 (2002):

> If a situation is not one of those outlined in [CJCR 2.11(A)], but nonetheless implicates impartiality, a judge should consider "[w]hether an objective, disinterested observer fully informed of the facts underlying the grounds on which . . . disqualification [was] contemplated would entertain a significant doubt that justice would be done in the case."

*Id.* (citation modified) (quoting Op. 96-14 at 1 Ariz. Sup. Ct. Jud. Ethics Advis. Comm. (Nov. 21, 1996)). The same test was echoed in Opinion 98-02 of the Arizona Supreme Court Judicial Ethics Advisory Committee, which provides: "[T]he test is whether an objective, disinterested, fully informed observer would reasonably question the impartiality of the judge." Op. 98-02 at 3 Ariz. Sup. Ct. Jud. Ethics Advis. Comm. (Mar. 24, 1998). Indeed, "[o]ur system of justice depends for its survival on the support and confidence of the public. It is important, therefore, that justice not only be impartially dispensed but also that any question of unfairness or partiality be avoided." *State ex rel. Corbin v. Superior Court*, 155 Ariz. 560, 562 (1987). A judge's prior voluntary recusal and re-entry—when unexplained—leaves doubts about the reasons for the recusal unresolved.

¶15 The plain language of the rules indicates that when a judicial officer must disqualify himself or herself, the judge must do so regardless of any action by the parties. This Court previously recognized that "each [judge] has a continuing individual responsibility to exercise 'considerable introspection and intellectual honesty,' in determining whether he or she may appropriately sit upon any matter that comes before the [c]ourt." *Scheehle v. Justs. of the Sup. Ct.*, 211 Ariz. 282, 301 (2005) (quoting Op. 98–02 Ariz. Sup. Ct. Jud. Ethics Advis. Comm. (Mar. 24, 1998)).

¶16 When a judge voluntarily recuses, CJCR 2.11(A) signals that the judge acknowledges his or her impartiality might reasonably be questioned. If the disqualification is for a reason other than the judge's "personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding," the parties, having been put on notice of the basis, may waive disqualification. CJCR 2.11(A)(1), (C). And a disqualification that originally necessitates

recusal generally does not forever bar a judge from re-entering a case if the reasons for the disqualification no longer exist. *See Scheehle*, 211 Ariz. at 301 (holding that under the unusual circumstances of that case, which included applying the rule of necessity, four justices who had previously recused from considering a matter were not forever barred from re-entering the same case).

¶17    CJCR 2.11(C) explains the step-by-step process a judge must follow if the judge believes he or she may fairly preside over a matter in which he or she was previously subject to disqualification:

> A judge subject to disqualification under this rule, other than for bias or prejudice under paragraph (A)(1), may disclose on the record the basis of the judge's disqualification and may ask the parties and their lawyers to consider, outside the presence of the judge and court personnel, whether to waive disqualification. If, following the disclosure, the parties and lawyers agree, without participation by the judge or court personnel, that the judge should not be disqualified, the judge may participate in the proceeding. The agreement shall be incorporated into the record of the proceeding.

¶18    As previously mentioned, in February 2020, Judge Dickerson initially recused from presiding over the parties' family court matter; but two years later, now in his new role as Presiding Judge, he re-entered the same case and ruled on Contreras' vexatious litigant motion. No explanation was given to the parties as to any change in circumstance, nor was any opportunity given for either party to be heard in opposition to this re-entry into the case. The parties were entitled to such disclosure and to have the opportunity to be heard. We hold that when a judge who previously recused from a case later determines that recusal is no longer warranted, he or she must advise the parties of his or her reasons for re-entering the case and give them an opportunity to be heard.

B.    **Professional Relationship**

¶19    Secondarily, Bourke also argues that Judge Dickerson's prior appointment of Contreras as justice of the peace pro tempore raises a conflict of interest that categorically disqualifies Judge Dickerson from determining any matter in their family case. Bourke did not meaningfully

raise this issue before the trial court and has therefore waived it. *See* § 12-409; Ariz. R. Fam. Law P. 6.1(c); Ariz. R. Civ. P. 42.2(d). The court of appeals did not address this belated claim.

¶20 Despite Bourke's waiver, the facts of this unusual case implicate judicial ethics and the public's trust in our courts, and so we exercise our discretion to entertain this secondary question solely to give presiding judges guidance and clarity going forward. *See Smith*, 203 Ariz. at 79 ¶ 12.

¶21 Under A.R.S. § 22-121(A), presiding judges appoint justices of the peace pro tempore, and they also exercise administrative supervision over the justice courts in their counties. *See In re Presiding Judges' Auth. to Establish Ct. Sec. Pol'ys & Procs.*, Admin. Order No. 96–32 (1996). These administrative responsibilities, along with the fact that the powers and duties of the justice of the peace pro tempore are described as "the same as a duly elected justice of the peace," § 22-121(C), establish that the presiding judge of a county superior court stands in a supervisory relationship to the justices of the peace pro tempore.

¶22 Also, in appointing a justice of the peace pro tempore, the presiding judge must determine that the appointee is a person "[o]f good moral character." *See* A.R.S. § 22-122 (describing the qualifications of justices of the peace pro tempore). Therefore, because presiding judges are directly involved in appointing justices of the peace pro tempore, they hold more than an attenuated "limited professional relationship." *See Smith*, 203 Ariz. at 79–80 ¶ 16 (finding that a "[l]imited professional relationship" between a judicial officer and a court administrator who was not subject to his supervision and merely worked in the same court building was sufficiently attenuated "that an informed, disinterested observer would not entertain significant doubt that justice would be done"). Accordingly, the professional relationship between a presiding judge and his or her previously appointed justice of the peace pro tempore *may* create the appearance of a close association giving rise to an objection.

¶23 Here, by appointing Contreras as a justice of the peace pro tempore, Judge Dickerson demonstrated his belief in Contreras' character and abilities just one month before Contreras filed his vexatious litigant motion. The appointment created more than an attenuated professional tie between Judge Dickerson and Contreras.

**¶24**      Nonetheless, the presiding judge and justice of the peace pro tempore professional relationship, without more, does not require recusal in every case where a presiding judge has previously appointed a justice of the peace pro tempore who now appears as a litigant.

**¶25**      The standard of "whether an objective, disinterested, fully informed observer would reasonably question" the judge's impartiality remains applicable in these circumstances. Op. 98-02 at 3 Ariz. Sup. Ct. Jud. Ethics Advis. Comm. (Mar. 24, 1998). And a party who challenges a "judge's impartiality must overcome the presumption that [superior court] judges are free of bias and prejudice." *Stagecoach Trails MHC, L.L.C. v. City of Benson*, 232 Ariz. 562, 568 ¶ 21 (App. 2013) (citation omitted). To do so, the challenging party must "set forth a specific basis for the claim of partiality and prove by a preponderance of the evidence that the judge is biased or prejudiced." *Simon v. Maricopa Med. Ctr.*, 225 Ariz. 55, 63 ¶ 29 (App. 2010) (quoting *State v. Medina*, 193 Ariz. 504, 510 ¶ 11 (1999)). Further inquiry might very well reveal that there is no actual partiality shown in favor of the appointee.

**¶26**      After a fact-intensive inquiry in *Kay S. v. Mark S.*, 213 Ariz. 373 (App. 2006)—a case involving an attorney who, from time to time, served as judge pro tempore in the same court as he practiced—the court of appeals found that an appearance of impropriety required remand. *Id.* at 374 ¶ 1. Following a dissolution of marriage trial, Mother's counsel discovered that Father's counsel, Everts, had not only served along with and provided coverage for the trial judge as a pro tempore, but the trial judge's staff stated Everts was "the division's 'preferred' judge pro tempore who frequently served in lieu of [the trial judge] and on whom the staff relied and preferred above any other substitute." *Id.* at 376 ¶ 17. Mother moved to disqualify the trial judge and, following an evidentiary hearing, the presiding family court judge found no just cause for removing the trial judge. *Id.* at 377 ¶ 20. In reversing that ruling, the court of appeals concluded that, under the facts of the case, the trial judge's "impartiality might reasonably be questioned." *Id.* at 379 ¶ 31. Although the court did not find any actual bias, it held that the presiding family court judge should have disqualified the trial judge given all the circumstances proven. *Id.* at 380 ¶ 35.

**¶27**      Whether disqualification of a presiding judge on the basis of a professional relationship with a justice of the peace pro tempore he or she

appointed is required under the facts of any given case will depend on factors such as, but not limited to: the presiding judge's involvement in the selection of the justice of the peace pro tempore, the amount of time between the appointment and litigation in question, the degree and frequency of contacts between the presiding judge and his or her appointee, and other case-specific factors that help shed light on whether the judge's impartiality might reasonably be questioned. *See Smith*, 203 Ariz. at 79 ¶ 16.

**¶28** Here, we do not squarely answer the question of whether Judge Dickerson's professional relationship with Contreras, in his capacity of justice of the peace pro tempore, would have required Judge Dickerson's disqualification because, given Bourke's failure to timely object on this separate basis, we lack sufficient insight into the nature of the professional relationship between the two.

**¶29** Bourke did not object to Judge Dickerson's determination of the vexatious litigant motion on the basis of his appointment of Contreras as justice of the peace pro tempore. Bourke claims she was not aware of this separate ground for disqualification in time to object. Contreras, on the other hand, provided a link to a social media post where Bourke commented regarding his reappointment as a justice of the peace pro tempore and the presiding judge's duty to obtain public comment. Thus, Bourke was on notice that Judge Dickerson had appointed Contreras as a justice of the peace pro tempore, but she failed to challenge Judge Dickerson for cause by filing a timely affidavit setting forth those grounds. *Contreras*, 258 Ariz. at 226 ¶ 8, 227 ¶ 11, 229 ¶ 17. Bourke was required to object within twenty days of her discovery of the grounds for Judge Dickerson's removal. § 12-409; Ariz. R. Fam. Law P. 6.1(a), (c); *see also* Ariz. R. Civ. P. 42.2(b), (d). We find no such objection in the record.

**¶30** Though the parties enjoy the right to move to disqualify a judge for alleged bias, that right may be waived by a party who fails to timely act. *John Munic Enters., Inc. v. Laos*, 235 Ariz. 12, 15 ¶ 4 (App. 2014). This we plainly articulated in *Marsin v. Udall*, 78 Ariz. 309, 312 (1955):

> Of course, one may with knowledge of the facts, consent that his case be tried before a judge he thinks is biased and prejudiced. The privilege to challenge the judge's fairness carries with it the concomitant right to willingly submit to trial. He is not compelled to exercise the right but may waive

it.

Here, Bourke failed to timely act by alleging in the trial court that Judge Dickerson's appointment of Contreras created the type of professional relationship that gave rise to bias or prejudice in favor of Contreras. *See Simon*, 225 Ariz. at 63 ¶ 29. Her failure to timely object on this separate ground prevented the claim from being fully litigated and, after full inquiry, potentially even resolved in her favor in that forum. Instead, Bourke, having stripped from the trial court the opportunity to make detailed inquiry into the operative facts and to make an initial determination on the merits of her claim, has now waived it on appeal. *See Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) (stating errors not raised in trial court cannot be asserted on appeal). Therefore, she is not entitled to relief due to any appearance of impropriety arising from Judge Dickerson's appointment of Contreras as a justice of the peace pro tempore.

## C.     **Relief**

**¶31**        Having held that Bourke was deprived of the right to know why Judge Dickerson initially recused from the case and why he thought he could re-enter it, we turn to the appropriate form of relief.

**¶32**        We note that, contrary to Bourke's assertion, actions taken by a judge after disqualification are voidable, but they are not void ab initio. *Conkling v. Crosby*, 29 Ariz. 60, 67–68 (1925). "A voidable judgment is one in which the court has jurisdiction over the subject matter and parties but which is otherwise erroneous and subject to reversal." *State v. Cramer*, 192 Ariz. 150, 153 ¶ 16 (App. 1998) (citing *Cockerham v. Zikratch*, 127 Ariz. 230, 234 (1980)). "An order is void if it exceeds the jurisdiction of the court or agency rendering it." *Legacy Found. Action Fund v. Citizens Clean Elections Comm'n*, 243 Ariz. 404, 406 ¶ 9 (2018); *see also Am. Asphalt & Grading Co. v. CMX, L.L.C.*, 227 Ariz. 117, 119 ¶ 11 (2011).

**¶33**        Here, the trial court retained jurisdiction over the parties even when Judge Dickerson entered his vexatious litigant ruling without giving them the reasons for his initial recusal and later re-entry into the case and an opportunity to be heard. Judge Dickerson's ruling was therefore voidable.

**¶34**        We now hold that, under CJCR 2.11(A), Judge Dickerson had an independent duty to advise the parties of those reasons and give them

an opportunity to be heard in opposition. *See supra* ¶¶ 13–18. Ordinarily, we would remand to the superior court so that it could provide the parties with notice of the circumstances Judge Dickerson believed no longer required his recusal from presiding over the vexatious litigant motion and give the parties an opportunity to be heard. If sufficient grounds existed to overcome the initial disqualification, Judge Dickerson's order could stand. If not, the motion would be reassigned to a different judicial officer for a new ruling.

¶35　　　　Because Judge Dickerson has retired, however, and because nothing further would be gained by remanding for additional inquiry into the nature of Judge Dickerson's relationship with Contreras, we remand for a new judicial officer to rule on Contreras' vexatious litigant motion.

## CONCLUSION

¶36　　　　For these reasons, we vacate the court of appeals' opinion, reverse the superior court's order declaring Bourke a vexatious litigant, and remand to that court for a different judge to rule on Contreras' motion to declare Bourke a vexatious litigant.